# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

_____

No. 04-2429

_____

Margaret Andrews,

           Appellant,

v.

Robert Fuoss, individually and in his capacity as Sheriff of Jones County, South Dakota,

           Appellee.

\*
\*
\*
\*
\*
\*
\*
\*
\*
\*

Appeal from the United States
District Court for the
District of South Dakota.

_____

Submitted: February 18, 2005
Filed: August 1, 2005

_____

Before MORRIS SHEPPARD ARNOLD, BOWMAN, and GRUENDER, Circuit Judges.

_____

GRUENDER, Circuit Judge.

Margaret Andrews ("Andrews") sued Sheriff Robert Fuoss ("Sheriff Fuoss"), individually and in his capacity as Sheriff of Jones County, South Dakota, for violations of her federal constitutional rights pursuant to 42 U.S.C. § 1983 and for state law battery, which the district court had supplemental jurisdiction to consider under 28 U.S.C. § 1367. Andrews alleged that Sheriff Fuoss violated her Fourth Amendment right to be free from unreasonable searches and seizures when he briefly

stopped her during an incident that occurred in the Jones County Courthouse, and that Sherif Fuoss employed excessive force in stopping her, also in violation of the Fourth Amendment. The district court[1] granted Sheriff Fuoss's motion for summary judgment on Andrews's § 1983 claim on the ground that he was entitled to qualified immunity because Andrews failed to establish that he violated a constitutional right. The district court also refused to exercise supplemental jurisdiction over Andrews's state law claim and dismissed that claim without prejudice. Andrews appeals, arguing that the district court erred in holding that Sheriff Fuoss's seizure of Andrews was constitutionally permissible and that Sheriff Fuoss's use of force was not excessive. We affirm.

## I.    BACKGROUND

On March 1, 2003, Andrews was in the Jones County Courthouse in Murdo, South Dakota, to attend the sentencing of her son James Andrews ("James") for his involvement in a crime spree that included assaulting an elderly woman at gunpoint, stealing her car, shooting at a house that provided day care, and lighting his mother's house on fire. At the time of his sentencing, James had an extensive prior criminal history. Even Andrews admitted that James's prior behavior led her to believe that he was dangerous and violent.

South Dakota Circuit Court Judge Max A. Gors ("Judge Gors") presided over James's case. Judge Gors told Sheriff Fuoss that he was free to exercise his discretion over how to keep the courtroom safe and secure, making Sheriff Fuoss his de facto bailiff. At James's earlier arraignment, Judge Gors asked Sheriff Fuoss how close James could get to spectators, including his mother. Sheriff Fuoss stated that there should be a ten-foot proximity limit for everyone except James's attorney

---

[1]The Honorable Richard H. Battey, United States District Judge for the District of South Dakota.

Thomas W. Clayton ("Clayton"). Sheriff Fuoss did not communicate the ten-foot prohibition to Andrews, but did tell her, James and Clayton that she could not have physical contact with James. Prior to James's sentencing, Sheriff Fuoss informed Deputy Mike Kiewel ("Deputy Kiewel") that he was implementing a rule that no person other than Clayton could come within ten feet of James. Sheriff Fuoss's "ten-foot rule" was intended to maintain courtroom security and safety but again was not communicated to Andrews, James or Clayton.

On the day of James's sentencing hearing, Andrews was seated in the public seating area. On the other side of a waist-high wooden railing, James sat at counsel's table with Clayton. While waiting for the hearing to begin, Clayton motioned for Andrews to come to him. Andrews recalls Clayton asking her a question, which she could not hear, and stepping forward as Clayton motioned to her.

The parties dispute the details of what happened next. Andrews claims she took two or three steps towards Clayton, coming within five or six feet of James, when she felt a forceful blow on her left shoulder that came from behind. The blow was forceful enough to make her "see stars," and the force spun her around so that she was facing Sheriff Fuoss. Sheriff Fuoss told her to remain ten feet away from her son. She told Sheriff Fuoss to "keep your hands off me." According to Andrews, Sheriff Fuoss's push was strong enough that she would have fallen had Sheriff Fuoss not grabbed her arms. Clayton, who did not witness the initial contact, stated that he noticed Andrews had been backed up five to seven feet in a split second.

In contrast, Sheriff Fuoss claims that the only contact he had with Andrews was when he extended his right arm and she ran into his open palm with her left shoulder, stopping her forward progress and only causing her to take one step back. Although Deputy Kiewel's description of the incident was similar to Andrews's, he stated that the only contact Sheriff Fuoss had with Andrews was a "straight-arm" push that caused Andrews to back up one step.

After the incident, Andrews was "shocked" and started to cry. Andrews reported an immediate pain flare-up relating to pre-existing neck and back conditions, but she returned to her seat and testified during the sentencing hearing. The incident left Andrews with a sore neck and a "horrible, horrible" headache. The next day, Andrews went to a physician due to continued soreness in her neck, arm and shoulder, but she could not recall whether she received any bruises from the encounter. Andrews also reported some increase in symptoms related to post-traumatic stress disorder, which she was diagnosed with after a prior, unrelated assault, but she admitted that her mental condition had been affected by other stressful events that also occurred at that time. Beyond exacerbation of her previous conditions, Andrews reported no other mental or physical problems resulting from the incident.

## II.    ANALYSIS

On appeal, Andrews asserts that the district court erred in granting Sheriff Fuoss's motion for summary judgment on the basis of qualified immunity because Sheriff Fuoss's actions violated her clearly established constitutional right to be free from unreasonable seizures under the Fourth Amendment to the United States Constitution as incorporated through the Fourteenth Amendment. We disagree.

"We review the district court's grant of summary judgment on the basis of qualified immunity de novo." *DeArmon v. Burgess*, 388 F.3d 609, 610 (8th Cir. 2004). State officers "are entitled to qualified immunity unless their alleged conduct violated 'clearly established statutory or constitutional rights of which a reasonable person [in their positions] would have known.'" *McCoy v. City of Monticello,* 342 F.3d 842, 846 (8th Cir. 2003) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). When determining whether a grant of summary judgment based on qualified immunity was proper, we "must first consider the threshold question of whether, construed in the light most favorable to the party asserting the injury, the facts alleged

show the officers' conduct violated a constitutional right." *Crow v. Montgomery*, 403 F.3d 598, 601 (8th Cir. 2005). "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Saucier v. Katz,* 533 U.S. 194, 201 (2001); *see also McCoy*, 342 F.3d at 846.

Andrews argues that Sheriff Fuoss violated her Fourth Amendment right to be free from an unreasonable seizure when he stopped her from moving any closer to James or Clayton. To establish a Fourth Amendment violation for her § 1983 claim, Andrews must demonstrate both that Sheriff Fuoss seized her within the meaning of the Fourth Amendment and that the seizure was unreasonable. *Hawkins v. City of Farmington*, 189 F.3d 695, 702 (8th Cir. 1999). Even assuming the incident in question constituted a seizure entitled to Fourth Amendment protections, we reject Andrews's argument because Sheriff Fuoss's actions were reasonable under the circumstances.

"A 'seizure' triggering the Fourth Amendment's protections occurs only when government actors have, 'by means of physical force or show of authority, . . . in some way restrained the liberty of a citizen." *Graham v. Connor*, 490 U.S. 386, 395 n.10 (1989) (quoting *Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968)); *see also United States v. Barry*, 394 F.3d 1070, 1074 (8th Cir. 2005). The district court held that Sheriff Fuoss's use of physical contact to prevent Andrews from coming within ten feet of James restrained her freedom to move where she pleased, and, for that reason, constituted a seizure for purposes of the Fourth Amendment. We assume without deciding that the district court correctly determined that the push constituted a seizure and consider whether the alleged seizure was reasonable.[2]

---

[2]Andrews supports her conclusion that Sheriff Fuoss unreasonably seized her by pointing out that Sheriff Fuoss acted without a warrant. The general rule with regard to the Warrant Clause of the Fourth Amendment is that the police must obtain a warrant for a search or seizure "whenever practicable." *Terry*, 392 U.S. at 20.

To justify a limited and momentary detention of a person without violating the Fourth Amendment's proscription against an unreasonable seizure, "the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry*, 392 U.S. at 21 (footnote omitted). Whether such a seizure is reasonable "must be determined on the totality of the circumstances and is to be judged from the perspective of a reasonable officer on the scene without regard to the underlying intent or motivation." *Hawkins*, 189 F.3d at 702.

On the day of James's sentencing, Sheriff Fuoss was Judge Gors's de facto bailiff, in charge of courtroom security and responsible for addressing any threats that may occur while James was in the courtroom. The parties in this case acknowledge that James had a long record of violent criminal behavior and was being sentenced for serious crimes, including aggravated assault. This history made his very presence in the courtroom a safety concern. In the interest of maintaining a safe and secure courtroom, it was reasonable for Sheriff Fuoss to place restrictions on the contact that anyone, Andrews included, could have with James for at least two reasons: first, James could have acted violently toward anyone near him, and, second, limiting physical contact with James greatly limited an outsider's ability to slip James a dangerous weapon to use in an attempted escape.

Recognizing that the important need for courtroom safety warranted some limits on the contact that Andrews could have with James, our analysis is not whether the ten-foot rule itself was constitutional, but whether Sheriff Fuoss's action in enforcing that rule was constitutional. While Andrews may not have known she needed to stay more than ten feet away from her son, she did know that she was not

---

Andrews's insistence that Sheriff Fuoss's actions were constitutionally deficient because he did not have a warrant is futile because it is untenable to argue that it would have been in any way practicable for Sheriff Fuoss to have obtained a warrant before enforcing his ten-foot rule.

to have physical contact with him. Sheriff Fuoss's action, whether it was merely extending his arm or an actual, forceful push, was not an unreasonable response to the need to keep Andrews from coming into physical contact with her son. Although the parties contest precisely how, they agree that Sheriff Fuoss very briefly stopped Andrews to inform her that she must keep a certain distance from her son. Because stopping Andrews was a reasonable means of furthering courtroom safety, we hold that even if Sheriff Fuoss seized Andrews by briefly stopping her, that seizure was not unreasonable. Therefore, Andrews fails to establish that Sheriff Fuoss violated her Fourth Amendment right to be free of an unreasonable seizure.

Andrews also argues that the manner in which Sheriff Fuoss stopped her was an unconstitutional use of excessive force. Specifically, Andrews argues that no physical force was necessary under these circumstances. Again, we reject Andrews's argument because Sheriff Fuoss's actions were reasonable under the circumstances.

The right to be free from excessive force is included under the Fourth Amendment's prohibition against unreasonable seizures of the person. *Guite v. Wright*, 147 F.3d 747, 750 (8th Cir. 1998) (citing *Graham*, 490 U.S. at 394). A violation of that right will support a § 1983 action, but not every push or shove by an officer violates the Fourth Amendment. *Crumley v. City of St. Paul*, 324 F.3d 1003, 1007 (8th Cir. 2003). Rather, an officer's use of force is not excessive under the Fourth Amendment if it was "objectively reasonable under the particular circumstances." *Greiner v. City of Champlin*, 27 F.3d 1346, 1354 (8th Cir. 1994). "'The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation.'" *Crumley*, 324 F.3d at 1007 (quoting *Graham*, 490 U.S. at 396-97).

As we have decided that Sheriff Fuoss's decision to stop Andrews was reasonable under the circumstances, we must only decide whether the means he employed, the "forceful blow," was a reasonable amount of force. Although we have remarked that "[i]t remains an open question in this circuit whether an excessive force claim requires some minimum level of injury," *Hunter v. Namanny*, 219 F.3d 825, 831 (8th Cir. 2000), we have also held that "a de minimis use of force or injury is insufficient to support a finding of a constitutional violation." *Crumley*, 324 F.3d at 1007; *see also Greiner*, 27 F.3d at 1355 (noting that the lack, or minor degree, of any injury is also relevant in determining the reasonableness of the force used to effect an arrest). In this case, Andrews alleges at most very minor injuries, likely nothing more than the temporary and slight aggravation of pre-existing conditions. These are precisely the type of de minimis injuries that preclude a claim for excessive force. *Crumley*, 324 F.3d at 1007. As a result, Andrews's argument that it was an excessive use of force to make any physical contact is not only dubious given the rapidly developing nature of the incident but also fails because she sustained no more than de minimis injuries. *Cf. Curd v. City Court*, 141 F.3d 839, 841 (8th Cir. 1998) (holding that "[e]ven if seizing [the plaintiff's] arm and turning her body was unnecessary to effect the arrest, we cannot conclude that this limited amount of force was objectively unreasonable," where there was no allegation or evidence of injury or physical pain).

In summary, even when the facts are viewed in the light most favorable to her claims, Andrews fails to establish that Sheriff Fuoss violated a clearly established constitutional right, and we hold that Sheriff Fuoss is entitled to qualified immunity.[3]

---

[3]The district court rejected Sheriff Fuoss's argument that he was entitled to absolute quasi-judicial immunity. *See*, *e.g.*, *Martin v. Hendren*, 127 F.3d 720, 721 (8th Cir. 1997) ("Like other officials, bailiffs enjoy absolute quasi-judicial immunity for actions 'specifically ordered by the trial judge and related to the judicial function.'" (quoting *Robinson v. Freeze*, 15 F.3d 107, 109 (8th Cir. 1994))). On appeal, Sheriff Fuoss again argues that he is entitled to absolute immunity, but our

## III. CONCLUSION

For the reasons stated above, we affirm the district court's grant of Sheriff Fuoss's motion for summary judgment on the basis of qualified immunity.

_____

holding that he is entitled to qualified immunity obviates the need to consider the issue of absolute immunity.