# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-1031

_____

Richard Wertish,                                  *
                                                  *
    Plaintiff - Appellant,                        *
                                                  *   Appeal from the United States
v.                                                *   District Court for the
                                                  *   District of Minnesota.
Norman D. Krueger, in his individual              *
capacity,                                         *
                                                  *
    Defendant - Appellee,                         *

_____

Submitted: September 15, 2005
      Filed: January 9, 2006

_____

Before LOKEN, Chief Judge, BYE and SMITH, Circuit Judges.

_____

LOKEN, Chief Judge.

Following a traffic arrest, Richard Wertish brought this damage action under 42 U.S.C. § 1983 against the arresting officer, Chief of Police Norman Krueger of Sacred Heart, Minnesota. Wertish alleged that he was arrested without cause and with the use of excessive force in violation of the Fourth Amendment. He also asserted pendent tort claims under Minnesota common law. The district court[1] granted summary judgment dismissing all claims, concluding that Krueger has qualified

---

[1]The HONORABLE ANN D. MONTGOMERY, United States District Judge for the District of Minnesota.

immunity from the § 1983 claims and official immunity from the state law claims. Wertish appeals the dismissal of his § 1983 excessive force claim and his state law assault and battery claims. Reviewing the grant of summary judgment *de novo* and viewing the record in the light most favorable to Wertish, the nonmoving party, we conclude that Krueger's use of force was constitutionally reasonable and that he is entitled to official immunity under Minnesota law. Accordingly, we affirm.

## I.

Chief of Police Krueger was stopped at a gas station in Sacred Heart on the evening of April 5, 2003, when a motorist reported being forced off the road by a red pickup truck that was driving erratically. Krueger spotted the truck a few blocks away and began to follow it eastbound on Highway 212 towards the city of Renville. When the truck swerved onto the shoulder and then back into the eastbound lane, Krueger activated his emergency lights to initiate a traffic stop. The truck did not pull over. Krueger sounded his siren. The truck still did not respond. Krueger sounded the siren a second time. The truck pulled to the shoulder and slowed to 20 mph but then sped up to approximately 40 mph. At that point, Krueger turned his siren on continuously and contacted the Renville police, who agreed to lay "stop sticks" (strips of hollow spikes) across the roadway at the outskirts of Renville to keep the dangerous truck from entering that city. During the next five and a half miles, Krueger observed the truck wander in and out of the roadside grassy ditch and twice cross into the westbound lane. As the two vehicles approached Renville, the truck finally pulled to the shoulder and stopped some thirty feet short of the stop sticks and a Renville squad car positioned on the shoulder to pursue the truck if it had eluded the stop sticks and continued into Renville.

Krueger and two Renville police officers approached the stopped truck with their weapons drawn and ordered the driver to get out of the vehicle at least four times. The driver did not respond. Unable to open the truck door, Krueger tried

unsuccessfully to break the side window with the heel of his gun. Finally, the driver unlocked the driver's side door. Krueger opened the door, grabbed the driver by his shirt collar, pulled him from the truck, and took him to the ground. Once on the ground, Krueger climbed on top of the prone driver and attempted to handcuff him. The driver ignored Krueger's command to place his hands behind his back, repeatedly asking, "What have I done?" Krueger and one of the Renville officers forcibly twisted the driver's arms behind his back and cuffed him. Krueger also saw an orange-handled box cutter protruding from the driver's front right pocket, grabbed the possible weapon, and threw it onto the road. At some point during this thirty-second scuffle, Krueger struck the driver in the back of the head with his elbow and hit him in the ribs with his knee. When the driver was handcuffed, Krueger and the Renville officer picked him up and pushed him against the truck.

The narrative to here is Krueger's version of the events that cannot be refuted by the driver of the truck, Richard Wertish. Wertish suffers from Type 1 diabetes. He testified that, while driving through Sacred Heart on his way home from work, he suffered a severe drop in blood sugar level. The resulting hypoglycemic condition caused him to become disoriented and lose his strength. According to Wertish, he was "partly out of it" and remembers very little of the drive eastbound from Sacred Heart until he heard a siren just west of Renville. Thinking it was a squad car pursuing someone else, he pulled to the shoulder to let it pass. When Krueger instead stopped and approached the truck, Wertish remembers unlocking the truck door with great difficulty. He does not recall being taken to the ground and handcuffed by Krueger and the Renville officer but denies having the strength to resist. If Krueger's unrefuted version of these events establishes that his use of force was constitutionally reasonable, we must affirm. See Dennen v. City of Duluth, 350 F.3d 786, 792 (8th Cir. 2003).

Wertish testified that he remembers almost nothing "until they had me slammed up against the truck in handcuffs. Then my liver give me some glucose and then I first

-3-

figured out what was going on." At that point, Wertish told the officers for the first time that he was having a diabetic reaction. He asked them to remove his handcuffs so he could retrieve from his truck a glucometer to check his blood sugar level and a soft drink and snack for sugar. Krueger instead promptly took Wertish to a nearby hospital where tests determined that Wertish's blood sugar level was, in fact, seriously low. Wertish revived after the hospital gave him glucose, food, and orange juice. Krueger then drove Wertish to his truck and released him. No charges were filed. As a result of the encounter, Wertish suffered bruised ribs, a sore shoulder, and multiple abrasions to his face and head. The injuries were not permanent but some took six weeks to heal. This lawsuit followed.

## II.

Qualified immunity shields police officers from liability for civil damages where "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In determining whether a police officer is entitled to qualified immunity from a § 1983 claim, we first consider whether the facts alleged, construed in the light most favorable to the party asserting the claim, show that the officer violated a constitutional right. "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." Saucier v. Katz, 533 U.S. 194, 201 (2001).

We analyze a claim that police employed excessive force during an arrest under the Fourth Amendment standard of "objective reasonableness." The reasonableness of a particular use of force depends on the circumstances of each case, including "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officer or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Graham v. Connor, 490 U.S. 386, 396 (1989). Our vantage point must be that of a reasonable officer on the scene, not the 20/20 vision of

hindsight. "The calculous of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments -- in circumstances that are tense, uncertain, and rapidly evolving -- about the amount of force that is necessary in a particular situation." Graham, 490 U.S. at 396-97.

In this case, it is undisputed that Wertish drove erratically and dangerously for many miles on a public highway, ignoring the flashing lights and wailing siren of Krueger's trailing squad car, which are well-known and dramatic signals to pull over and stop. Krueger could reasonably suspect that the driver was fleeing under the influence of drugs or alcohol and therefore posed a serious threat to public safety. Without question, Krueger and the Renville officers had probable cause, indeed, a public duty, to stop the truck and arrest its driver. See McCoy v. City of Monticello, 342 F.3d 842, 848 (8th Cir. 2003). When Wertish finally stopped but failed to comply with orders to get out of his vehicle, it was objectively reasonable for Krueger to pull Wertish from the truck and handcuff him. See Smith v. Ball State Univ., 295 F.3d 763, 771 (7th Cir. 2002); McGruder v. Heagwood, 197 F.3d 918, 920 (8th Cir. 1999); Foster v. Metropolitan Airports Commission, 914 F.2d 1076, 1082 (8th Cir. 1990). Thus, the situation faced by the officers here is far different than in Kukla v. Hulm, 310 F.3d 1046 (8th Cir. 2002), the case on which Wertish principally relies.

Given the reasonableness of the arrest and handcuffing, the only question is whether Krueger used excessive force before he learned that Wertish may be suffering from diabetic shock and took him to the hospital.[2] When a suspect is passively resistant, somewhat more force may reasonably be required. Wertish would not exit the truck, so it was reasonable to pull him out and take him to the ground.

---

[2]Wertish was understandably upset that the officers refused to remove his handcuffs so he could remedy his condition with food and drink he kept in the truck for this purpose. Krueger testified that he instead took Wertish to the hospital because he suspected Wertish was intoxicated and "you're not supposed to let them consume anything" before a breath test. This is not an excessive force issue.

-5-

Handcuffing inevitably involves some use of force. When Wertish persisted in lying on his hands, it was reasonable to pull them forcibly behind his back, where they could be cuffed. When the cuffed Wertish would not stand, it was reasonable to stand him up and push him against the truck, the point at which Krueger first learned that Wertish's dangerous actions were the product of a medical condition.

Wertish admits there was nothing visible to tell officer Krueger that he was dealing with a diabetic. Officer safety concerns made it objectively reasonable for Krueger and the Renville officers to assume they were dealing with a belligerent drunk -- or perhaps a fleeing criminal -- who required forcible detention. The force employed was appropriate to the task at hand. Moreover, because some force was reasonably required to arrest and handcuff Wertish, his relatively minor scrapes and bruises and the less-than-permanent aggravation of a prior shoulder condition were *de minimis* injuries that support the conclusion that Krueger did not use excessive force. See Andrews v. Fuoss, 417 F.3d 813, 818 (8th Cir. 2005); Crumley v. City of St. Paul, 324 F.3d 1003, 1007 (8th Cir. 2003); Foster, 914 F.2d at 1082. In these circumstances, we conclude that summary judgment dismissing Wertish's § 1983 excessive force claim must be affirmed because the facts construed most favorably to that claim show that no constitutional right was violated.

### III.

Wertish further argues that the district court erred in dismissing his assault and battery claims on the ground of official immunity. Under Minnesota law, official immunity protects police officers engaged in law enforcement efforts unless they act with subjective malice. Elwood v. Rice County, 423 N.W.2d 671, 678-79 (Minn. 1988). "Malice in the context of official immunity means intentionally committing an act that the official has reason to believe is legally prohibited." Kelly v. City of Minneapolis, 598 N.W.2d 657, 663 (Minn. 1999). Wertish argues he presented sufficient evidence of malice because "Krueger's actions were objectively

unreasonable, and he knew that they were unreasonable when he took them." This is nothing more than a reiteration of his § 1983 excessive force claim.

We recognize that the Minnesota test for official immunity "is a subjective standard, in contrast to the objective qualified immunity standard" under federal law. Nelson v. County of Wright, 162 F.3d 986, 991 (8th Cir. 1998). But Wertish presented no evidence of subjective malice, such as ill will toward Wertish or an intent to act unlawfully. Therefore, as in Elwood, the district court properly granted summary judgment dismissing Wertish's state law claims because nothing in the record "suggests other than an honest law enforcement effort by peace officers faced with uncertain circumstances." 423 N.W.2d at 679.

The judgment of the district court is affirmed.

BYE, Circuit Judge, concurring.

I write separately as I believe the actions undertaken by Chief Police Krueger, when viewed in the light most favorable to Richard Wertish, demonstrate a violation of his Fourth Amendment right to be free from excessive force. While the police were justified in stopping Wertish's vehicle based on his erratic driving, I agree with the district court which found the actions following the stop constituted a constitutional violation. The evidence shows Krueger forcefully threw Wertish to the ground upon opening his car door, handcuffed him after pinning him down and placing his weight on Wertish's back, and then picked him up and threw him into his own vehicle with sufficient force, ironically, to cause his body to produce insulin and regain awareness of his surroundings. Because Krueger continued to use force against Wertish when the evidence demonstrates he was not resisting arrest, Wertish has shown a constitutional violation.

I agree, however, with the ultimate conclusion here as Krueger's actions were covered under the doctrine of qualified immunity. Once a constitutional violation is established, we need to examine the circumstances objectively to determine if he acted reasonably, taking into account situations in which an "officer . . . correctly perceive[s] all of the relevant facts but [has] a mistaken understanding as to whether [the] particular amount of force is legal in those circumstances." Saucier v. Katz, 533 U.S. 194, 205 (2001). In other words, qualified immunity protects officers in situations involving the "hazy border between excessive and acceptable force." Id. at 206 (citation omitted).

This case involves the "hazy border." While Krueger used excessive force against Wertish, he was mistaken as to the true nature of the situation at hand. See McGruder v. Heagwood, 197 F.3d 918, 920 (8th Cir. 1999) (holding officers acted reasonably in apprehending a suspect by pulling him out of a car when the officers mistakenly believed the subject to be a flight risk). Krueger had no reason to believe Wertish was diabetic until Wertish mentioned his condition after being slammed into his own vehicle. Up to that point, Krueger could reasonably believe Wertish was an intoxicated driver refusing to cooperate and carrying a knife. Because Wertish was not demonstrating any classic symptoms of a person suffering a diabetic episode, my belief is "no reasonable officer" would have known Krueger's actions violated the Fourth Amendment. Winters v. Adams, 254 F.3d 758, 766 (8th Cir. 2001). Thus, his actions are protected under the doctrine of qualified immunity.

_____