# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

————————

No. 09-2195

————————

Kevin Chambers,                   *

                                *

         Appellant,        *

                                *     Appeal from the United States

     v.                           *     District Court for the

                                *     Eastern District of Missouri.

Michael Pennycook, Agent, St. Louis   *

County Drug Task Force; Bradley      *

Kelling, Officer; Andria Van Mierlo,   *

                                *

         Appellees.        *

————————

Submitted: October 20, 2010
Filed: June 6, 2011

————————

Before WOLLMAN, COLLOTON, and GRUENDER, Circuit Judges.

————————

COLLOTON, Circuit Judge.

Appellant Kevin Chambers brought this action against three law enforcement officers pursuant to 42 U.S.C. § 1983. He alleged that the officers violated his rights under the Fourth Amendment by using excessive force against him during and shortly after his arrest. The district court[1] concluded that Chambers's failure to show greater than *de minimis* injury was fatal to his claim and dismissed the complaint. We now

---

[1] The Honorable Stephen N. Limbaugh, Jr., United States District Judge for the Eastern District of Missouri.

conclude that a citizen may prove an unreasonable seizure based on an excessive use of force without necessarily showing more than *de minimis* injury, but we hold that the officers here are entitled to qualified immunity, because their alleged actions did not violate clearly established law. Accordingly, we affirm the district court's grant of summary judgment.

I.

On the afternoon of August 4, 2005, a team of police officers from St. Louis County executed a warrant to search for evidence of illegal drug activity at the apartment of Chambers's stepdaughter. Chambers was visiting when police arrived, and he was quickly placed under arrest. All three defendants participated in the search of the apartment. Bradley Kelling, a sergeant with the St. Louis County Police Department and a member of its Tactical Response Team, entered the apartment and observed Chambers until he was arrested and handcuffed. Andria Van Mierlo, a detective with the St. Louis County Police Department, and Michael Pennycook, an officer with the City of Maplewood, Missouri, Police Department, entered the apartment only after the Tactical Response Team had arrested and handcuffed Chambers.

At his deposition, Chambers testified that members of the Tactical Response Team held him on the floor, handcuffed him, and jammed guns into his back while Kelling asked him what he was doing at the apartment. According to Chambers, when he told Kelling that he was at the apartment to visit his stepdaughter, Kelling called him a liar, cursed at him, kicked him several times on both sides of his body, and pressed his foot down on Chambers's back. Chambers stated that the officers then brought him outside. According to Chambers, Kelling later emerged from the apartment, announced that he was going to search Chambers again, and planted a glass pipe in Chambers's pocket. Kelling was the only member of the Tactical Response Team whom Chambers identified by name.

Following Chambers's arrest, he was transported to the St. Louis County Police Department, and then to the county jail. Chambers repeatedly complained of back pain, and shortly after his arrival at the jail, Pennycook and Van Mierlo transported him in an unmarked police car to St. Mary's Health Center for an evaluation. Van Mierlo drove while Chambers sat in the passenger seat, and Pennycook sat in the seat immediately behind Chambers. Chambers was handcuffed behind his back and his seatbelt was fastened.

Chambers testified at his deposition that Van Mierlo and Pennycook adjusted his seat so that it was leaning as far forward as possible, with Chambers's head almost touching the dashboard. The officers complained that Chambers was wasting their time by requiring a ride to the hospital. According to Chambers, Van Mierlo began to drive erratically, accelerating and braking suddenly so that Chambers would be jerked back and forth in his seat. Chambers testified that Pennycook, meanwhile, forcefully kicked the back of his seat and used his arm to choke Chambers from behind, while complaining that Chambers was wasting their time. In Chambers's account, the trip lasted approximately twenty minutes because Van Mierlo chose to drive in circles rather than go straight to the hospital. Chambers also testified that after they arrived at St. Mary's, Van Mierlo and Pennycook roughly jerked him around by his handcuffs during the walk from the car to the building's front doors.

Once Chambers arrived at the hospital, he was evaluated by Dr. Randall Speck. Chambers testified that he told Speck that he was suffering from back and neck pain, which was so severe that Chambers was crying and had difficulty concentrating. Chambers stated that Speck had told him that his back showed signs of redness and bruising.

According to a note that Speck signed, Chambers told the hospital personnel that he had pain in his upper back caused by the officers who initially arrested him, although he said he was unsure whether the officers actually struck him or just fell

on him.  The note said that Chambers denied any head or neck injury, arm or leg pain, or shortness of breath.  Speck signed another note describing Chambers's final diagnosis as a "back contusion," while noting that there was no bruising or swelling on Chambers's spinal area, that Chambers showed no acute distress, and that Chambers had full range of motion in his arms and legs without discomfort.  The note also stated that x-rays of Chambers's spine and ribs showed no evidence of acute fractures.  Speck declared Chambers fit for confinement and recommended that he "take either Tylenol or Ultram [a pain medication] . . . as needed for pain."  The State prosecuted Chambers in connection with his arrest, and he eventually pleaded guilty to a felony drug charge pursuant to *North Carolina v. Alford*, 400 U.S. 25 (1970).

On September 12, 2005, Chambers commenced this action against St. Louis County, the St. Louis County Drug Task Force, and the three officers in their official and personal capacities, alleging that the defendants had violated his rights under the Fourth, Fifth, Eighth, and Fourteenth Amendments.  In the same action, Chambers brought an assault and battery claim under Missouri law.  He sought damages and declaratory and injunctive relief.  The district court granted the defendants' motions to dismiss all of Chambers's claims.  *Chambers v. St. Louis Cnty.*, No. 4:05-cv-01469-SNL, slip op. at 4 (E.D. Mo. April 18, 2006).  Chambers appealed, and a panel of this court affirmed the dismissal of the claims against St. Louis County and the St. Louis County Drug Task Force, reversed the dismissal of the claims against Kelling, Pennycook, and Van Mierlo in their individual capacities, and remanded to the district court for further proceedings.  *Chambers v. St. Louis Cnty.*, 247 F. App'x 846 (8th Cir. 2007) (per curiam).

On May 11, 2009, the district court granted summary judgment in favor of the remaining defendants.  The court reasoned that Chambers had presented no evidence that he had suffered anything more than *de minimis* injuries, and "[s]ince plaintiff has failed to produce evidence of any serious or permanent injuries, his claim for excessive force in violation of the Fourth Amendment fails."  *Chambers v. St. Louis*

-4-

*Cnty.*, No. 4:05-cv-01469-SNLJ, slip op. at 10-11 (E.D. Mo. May 11, 2009). The district court also dismissed the state law assault and battery claims without prejudice, declining to exercise supplemental jurisdiction over those claims after it determined that all the federal claims should be dismissed. Having found no constitutional violation, the district court did not address the officers' claims of qualified immunity.

Chambers again appealed to this court, arguing that the district court lacked jurisdiction and that the court erred by dismissing his claim for damages against the officers in their individual capacities, refusing his requests for appointed counsel, and failing to reprimand the defendants and their counsel for "deceitful and unethical tactics." On February 23, 2010, we affirmed the judgment of the district court. *Chambers v. Pennycook*, 366 F. App'x 707 (8th Cir. 2010) (per curiam). Chambers filed a petition for rehearing, arguing that our decision conflicted with the Supreme Court's holding in *Wilkins v. Gaddy*, 130 S. Ct. 1175 (2010), which was decided on the day before we issued our opinion. We granted the petition for rehearing, vacated our opinion and judgment of February 23, 2010, and appointed counsel to represent Chambers. We also directed the parties to file supplemental briefs concerning the question whether a plaintiff must show some minimum level of injury in order to state a valid Fourth Amendment excessive force claim under § 1983, and, if not, whether the officers here are entitled to qualified immunity.

II.

A.

Chambers first argues that the district court lacked jurisdiction to rule on the officers' motions for summary judgment while his interlocutory appeal of the district court's denial of his motion for appointment of counsel was still pending. Generally, "[t]he filing of a notice of appeal . . . confers jurisdiction on the court of appeals and divests the district court of its control over *those aspects of the case involved in the*

*appeal.*" *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982) (per curiam) (emphasis added); *see Ahlberg v. Chrysler Corp.*, 481 F.3d 630, 638 (8th Cir. 2007). Because the defendants' motions for summary judgment were not "aspects of the case involved in the appeal" of the district court's denial of Chambers's motion for appointment of counsel, the court retained jurisdiction to rule on the dispositive motions.

B.

We review the district court's grant of summary judgment *de novo*, viewing the record in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor. *Johnson v. Blaukat*, 453 F.3d 1108, 1112 (8th Cir. 2006). Although the district court did not reach the qualified immunity issue, "[w]e may uphold a grant of summary judgment for any reason supported by the record, even if different from the reasons given by the district court." *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999). Qualified immunity shields a government official from liability and the burdens of litigation in a § 1983 action for damages unless the official's conduct violated a clearly established constitutional or statutory right of which a reasonable official would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). When a defendant asserts qualified immunity at the summary judgment stage, the plaintiff must produce evidence sufficient to create a genuine issue of fact regarding whether the defendant violated clearly established law. *Johnson v. Fankell*, 520 U.S. 911, 915 (1997).

To defeat a claim of qualified immunity, a plaintiff alleging excessive use of force must present sufficient facts to show that the officer's conduct violated a constitutional right, and he also must establish that the constitutional right was clearly established. While we have discretion to decide which question should be addressed first, *Pearson v. Callahan*, 129 S. Ct. 808, 818 (2009), we think it best in this case to start with the constitutional question. This court has said several times, over the

course of more than fifteen years, that "[i]t remains an open question in this circuit whether an excessive force claim requires some minimum level of injury." *Copeland v. Locke*, 613 F.3d 875, 881 (8th Cir. 2010) (alteration in original) (internal quotation omitted); *see also Cook v. City of Bella Villa*, 582 F.3d 840, 850 (8th Cir. 2009); *Cavataio v. City of Bella Villa*, 570 F.3d 1015, 1019-20 (8th Cir. 2009); *Andrews v. Fuoss*, 417 F.3d 813, 818 (8th Cir. 2005); *Hunter v. Namanny*, 219 F.3d 825, 831 (8th Cir. 2000); *Dawkins v. Graham*, 50 F.3d 532, 535 (8th Cir. 1995). Continued postponement of that question has resulted in uncertainty about the rights of citizens and the responsibilities of law enforcement officers under the Fourth Amendment.

One aspect of the recurring "open question" is squarely presented in this case: whether a plaintiff must demonstrate greater than *de minimis* injury to establish a use of excessive force that violates the Fourth Amendment. Resolution of that issue will give guidance to officials about how to comply with legal requirements and will allow an avenue of redress for wronged citizens in appropriate circumstances. The question is unlikely to be resolved in the context of a criminal case or in litigation over municipal liability. *See Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 841 n.5 (1998). And none of the factors that typically counsel against a decision on the constitutional question are present here. *See Pearson*, 129 S. Ct. at 818-20. Having thought hard twice about how to exercise our discretion, *see Camreta v. Green*, No. 09-1454, 2011 WL 2039369, at *9 (U.S. May 26, 2011), and having ordered supplemental briefing and devoted substantial resources to considering the constitutional question in this case, we will proceed to decide it.[2]

---

[2]This case does not present the question whether an excessive force claim may proceed without a showing of "actual injury," *see Dawkins*, 50 F.3d at 535, a question that apparently has divided the circuits. *Compare Morrison v. Bd. of Trs.*, 583 F.3d 394, 407 (6th Cir. 2009), *Slicker v. Jackson*, 215 F.3d 1225, 1231-32 (11th Cir. 2000), *and Wilks v. Reyes*, 5 F.3d 412, 416 (9th Cir. 1993), *with Glenn v. City of Tyler*, 242 F.3d 307, 314 (5th Cir. 2001).

C.

We begin by asking whether Chambers has presented evidence sufficient to make out the deprivation of a constitutional right. *Pearson*, 129 S. Ct. at 815-16. Chambers complains that the officers' alleged use of force violated his rights under the Fourth, Fifth, and Eighth Amendments (as incorporated against the States through the Fourteenth Amendment), but we think the only provision properly invoked is the Fourth Amendment. "Where, as here, the excessive force claim arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment . . . ." *Graham v. Connor*, 490 U.S. 386, 394 (1989); *see Brown v. City of Golden Valley*, 574 F.3d 491, 496 (8th Cir. 2009).

At oral argument, counsel for two of the officers asserted that Chambers's claim against them does not arise under the Fourth Amendment, because the Fourth Amendment applies only up to the point of arrest. We have noted the existence of a "legal twilight zone" between arrest and sentencing, where it is unclear whether excessive force claims are governed by the Fourth Amendment or cases decided based on the Fourteenth Amendment and substantive due process. *Wilson v. Spain*, 209 F.3d 713, 715 (8th Cir. 2000). This court has ruled, however, that it is appropriate to use a Fourth Amendment framework to analyze excessive force claims arising out of incidents occurring shortly after arrest, apparently because those incidents still occur "in [the] course of" a seizure of a free citizen. *See Moore v. Novak*, 146 F.3d 531, 535 (8th Cir. 1998). In particular, we have applied Fourth Amendment excessive force standards to incidents occurring during the transportation, booking, and initial detention of recently arrested persons. *See Wilson*, 209 F.3d at 715-16; *Moore*, 146 F.3d at 535; *Mayard v. Hopwood*, 105 F.3d 1226, 1228 (8th Cir. 1997). The alleged excessive force here occurred during and shortly after Chambers's arrest, while he was on the floor of the apartment where police encountered him and while he was transported to the hospital for a medical

evaluation as part of the detainee intake process. Our cases therefore dictate that the claims against the officers are governed by the Fourth Amendment.

In *Graham v. Connor*, the Supreme Court mandated the application of an objective "reasonableness" standard when evaluating claims that government agents used excessive force in violation of the Fourth Amendment. 490 U.S. at 396. It is well-established that "the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Id.* An officer's use of force violates the Fourth Amendment when it is objectively unreasonable, given the facts and circumstances of the particular case, as "judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* at 396-97. The determination whether the force used to effect a seizure was reasonable ultimately requires a case-specific balancing of "'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." *Id.* at 396 (quoting *Tennessee v. Garner*, 471 U.S. 1, 8 (1985)).

The officers here assert that Chambers has failed to show the violation of a constitutional right, because he offered no evidence that he suffered greater than *de minimis* injuries as a result of the alleged excessive force. This court has concluded that "relatively minor scrapes and bruises" and a "less-than-permanent aggravation of a prior shoulder condition" are to be considered *de minimis* injuries, *Wertish v. Krueger*, 433 F.3d 1062, 1067 (8th Cir. 2006), and we agree that Chambers has not offered evidence to show that he suffered any greater injury.

We are not convinced, however, that evidence of only *de minimis* injury necessarily forecloses a claim of excessive force under the Fourth Amendment. The appropriate inquiry is "whether *the force used* to effect a particular seizure is 'reasonable.'" *Graham*, 490 U.S. at 396 (emphasis added). A *de minimis use of force* is insufficient to support a claim, *see Hunter*, 219 F.3d at 832; *Curd v. City Court*,

141 F.3d 839, 841 (8th Cir. 1998), and it may well be that most plaintiffs showing only *de minimis* injury can show only a corresponding *de minimis* use of force. The degree of injury is certainly relevant insofar as it tends to show the amount and type of force used. *See Cavataio*, 570 F.3d at 1020; *Cook*, 582 F.3d at 850; *Wertish*, 433 F.3d at 1067; *Curd*, 141 F.3d at 841; *Greiner v. City of Champlin*, 27 F.3d 1346, 1355 (8th Cir. 1994); *Foster v. Metro. Airports Comm'n*, 914 F.2d 1076, 1082 (8th Cir. 1990). But it is logically possible to prove an excessive use of *force* that caused only a minor *injury*, and a rule that forecloses a constitutional claim in that circumstance focuses on the wrong question.

The degree of injury should not be dispositive, because the nature of the force applied cannot be correlated perfectly with the type of injury inflicted. Some plaintiffs will be thicker-skinned than others, and the same application of force will have different effects on different people. A greater than *de minimis* injury requirement under the Fourth Amendment would mean that the same quantum of force, in the same circumstances, could be unconstitutional when applied to a citizen with a latent weakness and constitutional when applied to a hardier person. The governing rule should not turn on such unpredictable and fortuitous consequences of an officer's use of force. *See Lee v. Ferraro*, 284 F.3d 1188, 1200 (11th Cir. 2002). The rule should focus instead on whether *the force applied* is reasonable from the perspective of a reasonable officer on the scene at the time the force is used. *See Graham*, 490 U.S. at 396.[3]

---

[3]The Supreme Court's decision in *Wilkins v. Gaddy*, holding that *de minimis* injury does not foreclose an excessive force claim under the Eighth Amendment, is not controlling here. "[T]he subjective motivations of the individual officers are of central importance in deciding whether force used against a convicted prisoner violates the Eighth Amendment," *Graham*, 490 U.S. at 398, while "[t]he Fourth Amendment inquiry is one of 'objective reasonableness' under the circumstances, and subjective concepts like 'malice' and 'sadism' have no proper place in that inquiry." *Id.* at 399. *Wilkins*, however, does reinforce two propositions that are relevant here: "The extent of injury may . . . provide some indication of the amount of force

Our cases concerning excessive force claims arising from handcuffing do include language that might support the position of the officers here. We said in *Hanig v. Doe*, 415 F.3d 822 (8th Cir. 2005), that "[f]or the application of handcuffs to amount to excessive force, there must be something beyond minor injuries." *Id.* at 824; *accord Crumley v. City of St. Paul*, 324 F.3d 1003, 1008 (8th Cir. 2003). Those decisions, however, should not be read to establish a general rule equating quantum of injury with quantum of force under the Fourth Amendment. "Handcuffing inevitably involves some use of force," *Wertish*, 433 F.3d at 1067, and it almost inevitably will result in some irritation, minor injury, or discomfort where the handcuffs are applied. *See Rodriguez v. Farrell*, 280 F.3d 1341, 1351 (11th Cir. 2002). To prove that the force applied was excessive in that context, therefore, a plaintiff must demonstrate something more. *See Fisher v. City of Las Cruces*, 584 F.3d 888, 898 (10th Cir. 2009). As a general proposition, however, there is no uniform requirement that a plaintiff show more than *de minimis* injury to establish an application of excessive force. *See Lambert v. City of Dumas*, 187 F.3d 931, 936 (8th Cir. 1999) (holding that "[a] single small cut of the lateral right eyelid and small scrapes of the right posterior knee and upper calf" were sufficient to support an excessive force claim).[4]

The officers here contend that if greater than *de minimis* injury is not required in order to state a Fourth Amendment excessive force claim, then police officers will be reluctant to use any force when making a seizure, for fear of causing some slight

---

applied," but "[i]njury and force . . . are only imperfectly correlated." 130 S. Ct. at 1178.

[4]It appears that most circuits to have considered the issue have reached the same conclusion. *See Morrison*, 583 F.3d at 407; *Chelios v. Heavener*, 520 F.3d 678, 690 (7th Cir. 2008); *Hayes v. New York City Police Dep't*, 212 F. App'x 60, 62 (2d Cir. 2007) (per curiam); *Wardlaw v. Pickett*, 1 F.3d 1297, 1304 n.7 (D.C. Cir. 1993); *see also Bastien v. Goddard*, 279 F.3d 10, 14-16 & n.5 (1st Cir. 2002); *Wilks*, 5 F.3d at 416. *But see Glenn*, 242 F.3d at 314.

harm that violates a detainee's constitutional rights.  We appreciate the concerns of the officers, but we think they are misplaced.  Nothing in our opinion today lightens the significant burden that a plaintiff must carry in a § 1983 suit based on a Fourth Amendment excessive force claim.  Police officers undoubtedly have a right to use some degree of physical force, or threat thereof, to effect a lawful seizure, *Graham*, 490 U.S. at 396, and reasonable applications of force may well cause pain or minor injuries with some frequency.  It remains firmly established that "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Id.* (internal citation and quotation omitted).  The dispositive question is whether the officer's conduct was objectively reasonable under the circumstances, as judged from the perspective of a reasonable officer on the scene at the time the force was applied.  *See id.*; *Cook*, 582 F.3d at 849.

The facts of the incident in this case are hotly disputed, but taking them in the light most favorable to Chambers, we conclude that the alleged conduct of the officers was not objectively reasonable.  According to Chambers's testimony, Kelling kicked him several times on both sides of his body, although he was restrained on the ground and offering no resistance.  Chambers also testified that Pennycook repeatedly choked and kicked him during the trip to the hospital, and that Van Mierlo extended the journey by taking a roundabout route and intentionally driving so erratically that Chambers was jerked roughly back and forth in his car seat while his head was positioned adjacent to the dashboard.  While the absence of significant injury surely would be one factor that a jury would consider in determining whether to credit the plaintiff's account, Chambers has presented sufficient evidence, if believed, to establish a violation of the Fourth Amendment.  The gratuitous use of force alleged by Chambers was not reasonable under the circumstances.

D.

The second step in the qualified immunity analysis is to determine whether the right that was violated was "clearly established" at the time of the defendant's alleged misconduct. *Pearson*, 129 S. Ct. at 816. For a right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). A plaintiff need not show that the "very action in question ha[d] previously been held unlawful," but he must establish that the unlawfulness was apparent in light of preexisting law. *Id*. In other words, we must ask whether the law at the time of the events in question gave the officers "fair warning" that their conduct was unconstitutional. *Hope v. Pelzer*, 536 U.S. 730, 741 (2002).

Generally speaking, of course, it was clearly established in August 2005 that an arrestee had a right to be free from the use of excessive force. *See, e.g.*, *Kukla v. Hulm*, 310 F.3d 1046, 1050 (8th Cir. 2002). It was not clearly established, however, that an officer violated the rights of an arrestee by applying force that caused only *de minimis* injury. Just three days before the events giving rise to this case, we filed an opinion reiterating that "[i]t remains an open question in this circuit whether an excessive force claim requires some minimum level of injury." *Andrews*, 417 F.3d at 818 (alteration in original) (internal quotation omitted). The *Andrews* opinion suggested that "de minimis injuries" may "*preclude* a claim for excessive force," *id*. (emphasis added), and also noted that "the lack, or minor degree, of any injury is also relevant in determining the reasonableness of *the force used* to effect an arrest." *Id*. (emphasis added) (citing *Greiner*, 27 F.3d at 1355). The court ultimately resolved that case based on qualified immunity. *Id*. at 819.

Given the state of the law in August 2005, a reasonable officer could have believed that as long as he did not cause more than *de minimis* injury to an arrestee, his actions would not run afoul of the Fourth Amendment. A reasonable officer was

-13-

permitted to assume that legal conclusion when determining how to proceed, and he is entitled to have his conduct judged according to that standard for purposes of qualified immunity. *See Dunn v. Denk*, 79 F.3d 401, 403 (5th Cir. 1996) (en banc); *Harper v. Harris Cnty.*, 21 F.3d 597, 601 (5th Cir. 1994) (per curiam).

According to the testimony given by Chambers, the officers used a degree of force that was excessive. Under the law in August 2005, the officers ran the risk of liability if that force caused significant injury. But the converse is also true. The officers knew there was some chance that their actions would cause only *de minimis* injury, and it was reasonable for the officers to believe that they remained within constitutional bounds if that was the result. As it turned out, the force did not cause more than *de minimis* injury. We reject in this decision a constitutional rule that turns on the arrestee's degree of injury, but given the law prevailing at the time of the incident, we conclude that the officers are entitled to qualified immunity.

III.

Chambers raises two other points on appeal. First, he contends that the district court erred in failing to grant his request to sanction appellees and their counsel under Federal Rule of Civil Procedure 11 for "deceitful and unethical tactics." The district court's on-the-scene judgment in sanctions matters is entitled to substantial deference, *Teamsters Nat'l Freight Indus. Negotiating Comm. v. MME, Inc.*, 116 F.3d 1241, 1242 (8th Cir. 1997) (per curiam), and after a careful review of the record, we see no abuse of discretion.

Second, Chambers asserts that the district court erred in denying his request for appointment of counsel. Chambers had no constitutional or statutory right to appointed counsel, *Phillips v. Jasper Cnty. Jail*, 437 F.3d 791, 794 (8th Cir. 2006), but the district court has authority to recruit counsel for an indigent person in appropriate circumstances. *See* 28 U.S.C. § 1915(e)(1). The court has a good deal

of discretion to determine whether representation is warranted given the nature of the case and the litigants. *Phillips*, 437 F.3d at 794. We think the district court reasonably determined that recruitment of counsel was not necessary in view of the relatively straightforward questions of fact that the court thought dispositive under the prevailing law. We later appointed counsel on appeal to assist with our consideration of more complex legal issues, and Chambers thus suffered no prejudice from any deficiency of his legal acumen in the district court.

The court appreciates the efforts of appointed counsel in presenting the case for Mr. Chambers on rehearing.

\* \* \*

The judgment of the district court is affirmed.

_____