# United States Court of Appeals

## For the Eighth Circuit

_____

No. 12-2661

_____

Mark Shane Bishop,

*Plaintiff - Appellant*,

v.

Deputy Dale Glazier, in his individual and official capacities; Freeborn County,

*Defendants - Appellees*.

_____

Appeal from United States District Court
for the District of Minnesota - Minneapolis

_____

Submitted: March 14, 2013
Filed: July 30, 2013

_____

Before WOLLMAN and COLLOTON, Circuit Judges, and HOLMES,[1] District Judge.

_____

COLLOTON, Circuit Judge.

---

[1]The Honorable P. K. Holmes, III, Chief Judge, United States District Court for the Western District of Arkansas, sitting by designation.

Appellant Mark Shane Bishop brought this action against Deputy Sheriff Dale Glazier of Freeborn County, Minnesota, pursuant to 42 U.S.C. § 1983. He alleged that Glazier violated his rights under the Fourth Amendment by using excessive force against him. The district court[2] concluded that there was insufficient evidence of excessive force and granted summary judgment for Glazier based on qualified immunity. We affirm.

I.

Around 1:00 a.m. on December 12, 2010, Bishop was driving through Freeborn County, Minnesota, on a trip from Michigan to Oklahoma. Bishop's fiancée, Jessica Leasure, and the couple's daughter were in the vehicle with him. Blizzard conditions made driving difficult, so Bishop decided to stop at a hotel for the night until the weather cleared. He exited the highway and was proceeding westbound on Freeborn County Road 46 toward the nearest hotel when his car hit a snow drift. The vehicle slid across the roadway and became stuck in a snow bank, facing westbound in the eastbound lane. Bishop unsuccessfully tried to free his vehicle from the snow bank. He then called 911 and requested assistance. The dispatcher advised Bishop that she would send a deputy to help.

Approximately thirty minutes later, Glazier arrived in a four-wheel drive car, which he parked behind Bishop's vehicle. Glazier assisted Bishop in attempting to free the vehicle by shoveling snow from around the front tires of Bishop's car. Glazier then pushed the car back and instructed Bishop to turn his wheel to the right and to drive toward the road surface. Instead of turning the car, Bishop drove straight back into the snow bank. Glazier testified that he shoveled out Bishop's tires and

---

[2]The Honorable Richard H. Kyle, United States District Judge for the District of Minnesota.

pushed the car back "numerous times," but that Bishop continued to drive straight back into the snow bank.

After these unsuccessful attempts to free Bishop's vehicle, Glazier instructed Bishop to shovel out the front tires himself and returned to his own car. Glazier then radioed for assistance from police officers in the nearby city of Albert Lea. When two Albert Lea police officers arrived on the scene with a tow rope, Glazier positioned his car in front of Bishop's vehicle. Glazier hooked one end of the tow rope to the back of his car and offered Bishop the other end. After Bishop's attempts to attach the tow rope to his car were unsuccessful, he returned to his car and sat in the driver's seat. Bishop testified that Glazier was swearing at him during the encounter, and he described Glazier as rude, demeaning, and aggressive.

The parties dispute the details of what happened next. Bishop claims that Glazier approached his car and opened the driver's side door to speak with him. Glazier, who "was screaming at" Bishop, said he would drive Leasure and the child to the hotel while Bishop stayed with his car. Because he did not like the way Glazier was treating him, Bishop asked if he could "go talk to" the Albert Lea police officers who were parked nearby. When prompted to clarify exactly what he said to Glazier, Bishop testified: "I believe I asked him if he could go get the other officers in the vehicle or if we could deal with a different officer because he was being completely rude." Glazier denied Bishop's request.

Bishop said he did not believe he could leave his vehicle at this time, because Glazier was physically blocking the driver's side door with his body. But when Glazier stepped back from Bishop's car door, Bishop exited his vehicle with his hands raised, stating, "I'm going to get another officer, I'd like another officer, please." At the time Bishop stepped out of his car, Glazier was standing between Bishop and the open door, but there was sufficient space for Bishop to exit his vehicle without coming into contact with Glazier. According to Bishop, Glazier "grabbed

[him] by [his] throat and by [his] jacket" after he stepped out of the car and shoved him against the side of the car. Bishop claims that Glazier applied pressure to his throat for "[r]oughly 45 seconds to a minute," that his breathing was restricted, and that he had difficulty talking during that time. Bishop claims Glazier then "shoved" him back into his car and told him to "shut the f*** up and sit the f*** down."

In contrast, Glazier contends that the only contact he had with Bishop was when he grabbed Bishop's left shoulder with his right hand, "pushed him back into the car," and told him "to remain in the car." Glazier acknowledged that he used "minimal" force to put Bishop back in his vehicle, but stated his actions were justified by reasonable safety concerns.

After Glazier pushed him back into his car, Bishop called 911 and reported that Glazier had assaulted him. Bishop told the 911 operator that Glazier "grabbed [him] by the throat and threw [him] up against [his] car . . . while [he] was calling out for another officer." The operator gave Bishop contact information for the Freeborn County Sheriff's Office and contacted a tow company. Glazier remained at the scene until the tow truck driver arrived and pulled Bishop's vehicle out of the snow bank.

Days after the incident, Bishop spoke with an investigator from the Freeborn County Sheriff's Office. During the call, Bishop complained that Glazier had "grabbed [Bishop] by the throat with one hand and with his other hand he . . . slammed [Bishop] up against [his] car." On December 29, 2010, Bishop filed a complaint with the Freeborn County Sheriff's Office. Bishop submitted a typewritten statement he had prepared shortly after the incident, repeating his allegation that Glazier had grabbed him by the throat. Leasure also submitted a typewritten statement, in which she claimed that Glazier had "lunged at [Bishop], slamming him up against the car with his hand around [Bishop's] neck," and that Glazier then had forced Bishop into his car. As a result of the incident with Glazier, Bishop suffered a "light cut" on his neck that took approximately a week and a half

-4-

to heal. Bishop testified that the cut did not bleed, and that he did not seek any treatment for the cut.

Bishop filed a civil rights action pursuant to 42 U.S.C. § 1983, alleging that Glazier violated his constitutional right under the Fourth Amendment to be free from the use of excessive force. Glazier moved for summary judgment, arguing, *inter alia*, that he is entitled to qualified immunity. The district court granted summary judgment for Glazier, concluding that it was objectively reasonable for Glazier to use force against Bishop and that the amount of force Glazier used was not constitutionally excessive.

## II.

We review the district court's grant of summary judgment *de novo*, viewing the record in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). We may uphold a grant of summary judgment for any reason supported by the record, even if different from the reasons given by the district court. *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999). In § 1983 actions, qualified immunity shields government officials from liability unless their conduct violated a clearly established constitutional or statutory right of which a reasonable official would have known. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). When a defendant asserts qualified immunity at the summary judgment stage, the plaintiff must produce evidence sufficient to create a genuine issue of fact regarding whether the defendant violated a clearly established right. *Chambers v. Pennycook*, 641 F.3d 898, 904 (8th Cir. 2011).

Bishop's claim of excessive force is governed by the Fourth Amendment's prohibition against unreasonable seizures. *See Graham v. Connor*, 490 U.S. 386, 395 (1989). An officer's use of force violates the Fourth Amendment when it is

objectively unreasonable, given the facts and circumstances of the particular case, as "judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* at 396-97. We must balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests against" the countervailing governmental interests at stake. *Tennessee v. Garner*, 471 U.S. 1, 8 (1985). To defeat a claim of qualified immunity, a plaintiff alleging excessive use of force must present sufficient facts to show both that the officer's conduct violated a constitutional right, and that the constitutional right was clearly established. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). We have discretion to decide which question should be addressed first, *Pearson v. Callahan*, 555 U.S. 223, 236 (2009), and we think it best in this case to start with the latter.

"[W]hether the constitutional right at issue was 'clearly established' is a question of law for the court to decide." *Rohrbough v. Hall*, 586 F.3d 582, 586 (8th Cir. 2009). For a right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). That is, the unlawfulness of an officer's conduct "must be apparent" in light of pre-existing law. *Id.* While there is no requirement that "the very action in question has previously been held unlawful," *id.*, Bishop can succeed only if earlier cases gave Glazier fair warning that his alleged treatment of Bishop was unconstitutional. *See Johnson v. Carroll*, 658 F.3d 819, 828 (8th Cir. 2011).

Glazier argues that even if all that Bishop alleges were true, there would be no violation of Bishop's clearly established right to be free of excessive force, because he suffered nothing more than *de minimis* injury. Bishop responds that *Mayard v. Hopwood*, 105 F.3d 1226 (8th Cir. 1997), and *Henderson v. Munn*, 439 F.3d 497 (8th Cir. 2006), clearly established that a plaintiff suffers a deprivation of a constitutional right where an official uses excessive force, even when the injury is minor. Bishop argues that there was a constitutional violation here, because even if Glazier "had the

right to push [him] back inside his car," no legitimate interest justified the alleged choking. *See Hemphill v. Hale*, 677 F.3d 799, 801 (8th Cir. 2012). *Mayard* and *Henderson* lend some support to Bishop's position. But other precedents in place at the time of this incident pointed in the other direction, suggesting that the presence of only *de minimis* injuries may *preclude* a claim for excessive force. *See Andrews v. Fuoss*, 417 F.3d 813, 818 (8th Cir. 2005); *Crumley v. City of St. Paul*, 324 F.3d 1003, 1007 (8th Cir. 2003).

We surveyed this landscape in *Chambers* and concluded that it remained an open question in this circuit "whether a plaintiff must demonstrate greater than *de minimis* injury to establish a use of excessive force that violates the Fourth Amendment." *Chambers*, 641 F.3d at 904. We resolved that question by rejecting a constitutional rule that turns on the arrestee's degree of injury. According to *Chambers*, the appropriate inquiry is whether the *force used* is objectively reasonable, at least where the plaintiff shows some "actual injury." *Id.* at 905-06 & n.2. While "[t]he degree of injury is certainly relevant insofar as it tends to show the amount and type of force used," we reasoned, "it is logically possible to prove an excessive use of *force* that caused only a minor *injury*." *Id*. at 906.

"The distinction between *de minimis* force and *de minimis* injury, however, was not clear until *Chambers* was decided." *LaCross v. City of Duluth*, 713 F.3d 1155, 1158 (8th Cir. 2013). As of December 2010, when Glazier encountered Bishop, "a reasonable officer could have believed that as long as he did not cause more than *de minimis* injury to an arrestee, his actions would not run afoul of the Fourth Amendment." *Chambers*, 641 F.3d at 908. Even if we assume for the sake of analysis that Glazier grabbed Bishop by the throat for 45-60 seconds, and that Bishop's breathing and speaking were restricted during that time, Bishop's only injury was a "light cut" on his neck that did not bleed and for which he did not seek any treatment. The amount of force that Glazier allegedly used did not cause more than *de minimis* injury. *See Wertish v. Kreuger*, 433 F.3d 1062, 1067 (8th Cir. 2006)

-7-

(concluding that "relatively minor scrapes and bruises" and "less-than-permanent aggravation of a prior shoulder condition" were *de minimis* injuries.). Glazier is thus entitled to qualified immunity, because he did not violate Bishop's then clearly established constitutional rights under the Fourth Amendment. *See LaCross*, 713 F.3d at 1158.

*      *      *

The judgment of the district court is affirmed.

_____