# United States Court of Appeals

## For the Eighth Circuit

_____

No. 14-2229

_____

Jonathon Ziesmer

*Plaintiff - Appellant*

v.

Derrick Lee Hagen, individually and in his professional capacity as a Minnesota
State Patrol Officer

*Defendant - Appellee*

_____

Appeal from United States District Court
for the District of Minnesota - Minneapolis

_____

Submitted: February 11, 2015
Filed: May 11, 2015

_____

Before GRUENDER, SHEPHERD, and KELLY, Circuit Judges.

_____

KELLY, Circuit Judge.

Jonathon Ziesmer appeals the district court's grant of summary judgment in
favor of the defendant, Trooper Derrick Lee Hagen, on his claim for relief under
42 U.S.C. § 1983. Ziesmer alleges that Hagen used excessive force during an
unlawful arrest. Under the facts viewed in a light most favorable to Ziesmer, we

conclude that Trooper Hagen is not entitled to judgment as a matter of law, and we therefore reverse.[1]

## I. Background

On August 22, 2010, Ziesmer was driving brothers Travis and Tyler Jones back home on Interstate 94 from a restaurant in St. Paul, Minnesota. Travis Jones attempted to flick a cigarette out the passenger-side window, but the butt flew back in through the rear window and landed on the floor of the backseat. Ziesmer pulled the car over so the cigarette could be retrieved. Moments later, Trooper Hagen pulled his patrol car up behind Ziesmer's car and approached to see if the vehicle's occupants required assistance.

Trooper Hagen approached the front passenger side of the car, where Travis Jones was seated with his window rolled halfway down. Trooper Hagen later testified that Travis Jones was "moving around" and "quickly bent over as if he was reaching for something." Travis Jones denied making any furtive movements. As Trooper Hagen approached, he claims he saw a hammer lying on the floor of the car; Ziesmer, however, contends the hammer was concealed beneath the seat and that Hagen could not possibly have been aware of it until after a later search. Trooper Hagen also reports that the smell of marijuana was coming from the car, though all three of the passengers contest this fact. Answering Trooper Hagen's inquiries, Travis Jones and Ziesmer explained that they were pulled over in order to extinguish a cigarette. Trooper Hagen then requested each of the passengers' identification and went back to his patrol car to run their names through the police database. No relevant information concerning Ziesmer, his car, or the two Jones brothers appeared.

---

[1]We have jurisdiction over this appeal under 28 U.S.C. § 1291.

Trooper Hagen returned to the car and asked Travis Jones to get out. Once Travis Jones complied, Trooper Hagen told him that he was going to be searched. He reports that as he was placing his hands on the car to be searched, Trooper Hagen shoved him, though Trooper Hagen disputes this. After Trooper Hagen frisked Travis Jones, he instructed him to go stand underneath a highway overpass, about 15 or 20 yards away, and Travis Jones complied.

Trooper Hagen then came to the driver's side of the car and instructed Ziesmer to exit the car. According to Ziesmer, he "calmly" asked why he had to exit the vehicle, which led to Trooper Hagen screaming, "Get out of your car right now, I do not have to have a reason to pull you out of your car." Trooper Hagen admits that he raised his voice but denies screaming. Ziesmer also reports that he attempted to call 911 on his cell phone, but Trooper Hagen "just reached in my window . . . and he hung up my phone and threw it on the passenger floor." While Trooper Hagen claims he does not remember Ziesmer ever having a phone, the St. Paul Police Department has a record of the received 911 call.

Trooper Hagen testified that he believed Ziesmer was going to flee the scene by driving away. In response, he reached in through the window, unlocked the driver's side door, unfastened Ziesmer's seatbelt, and pulled him out of the car. Ziesmer claims that Trooper Hagen threw him against the car and then onto the ground. Trooper Hagen then asked Ziesmer to stand up and wait on the grass by the side of the road. Ziesmer testified that he went and stood on the grass, waiting while Trooper Hagen stared at him for "almost a minute." After this pause, Ziesmer testified that Trooper Hagen tackled him to the ground and dug his knee into his back, while pulling Ziesmer's hands behind his back, causing his shoulder to pop out of its socket. Trooper Hagen popped Ziesmer's shoulder back into its socket and then punched him in the back of the head four to eight times. Travis Jones testified that he observed Trooper Hagen using his forearm to push Ziesmer's face into the ground several times, even after placing handcuffs on Ziesmer. Trooper Hagen denies tackling and

hitting Ziesmer and instead says that once Ziesmer was on the ground outside the car, he handcuffed him, searched him, and stood him up.

When Trooper Hagen searched Ziesmer he found a small amount of marijuana in a baby food jar and a pipe with marijuana residue in a pocket of Ziesmer's pants. Trooper Hagen also searched Tyler Jones, as well as Ziesmer's vehicle. After placing Ziesmer in the back of his squad car, Hagen activated his dashboard camera, which had not been recording while the altercation took place. He then questioned Ziesmer about what had just occurred. Travis Jones testified that Trooper Hagen also questioned him repeatedly about why Ziesmer had resisted, although he himself did not believe Ziesmer had resisted.

Ziesmer was given a written citation for possession of marijuana and released. The charges were later dropped. He did not call for an ambulance or go to the hospital, but instead dropped the Jones brothers off at their home before continuing home himself. Immediately after the incident Ziesmer reports that he had bruising and scrapes on his face and a large knot on the back of his head. He took pictures of his bruised face when he got home. Tyler Jones testified that there was a welt on Ziesmer's head the day after the incident. Five days after the incident Ziesmer went to a physician for x-rays of his spine, head, and neck area. Ziesmer claims that a few days or weeks later he "called the state patrol office to get the audio and video footage" of the incident, but the office informed him that there was no footage available.

Ziesmer did not see a doctor again until almost three months later. On November 8, 2010, he underwent a magnetic resonance imaging (MRI) and was diagnosed with "minimal disc bulging" and neck and upper-back pain. He next saw a doctor in March, four months later, for a computerized tomography (CT) scan to diagnose neck pain. He was advised to see if the pain would subside with time. Zeismer did not return again to the doctor for a year and a half, and in October 2012

-4-

he complained of continued neck pain, at which point he began receiving physical therapy. In December, after many physical-therapy sessions, Dr. David Spight from the Institute of Low Back and Neck Care noted that there is "no change in right neck pain" and "limited cervical right side bending and rotation" due to "post-traumatic right neck pain." Dr. Spight also noted that he thought the symptoms were "not consistent with permanent injury."

Zeismer did not begin to complain of shoulder pain until January 2013, about two and a half years after the altercation with Trooper Hagen occurred. In July 2013 Dr. Christopher Meyer reported:

> I do not think there is anything to be done for his shoulder. This appears to be neck discogenic pain that radiates to the parascapular region quite commonly. I would continue to treat this through the Institute for Low Back and Neck, but I do not believe that he needs intervention for his shoulder.

Ziesmer then brought a § 1983 action in the United States District Court for the District of Minnesota for money damages. Ziesmer alleged that his injuries are the result of excessive force and unreasonable seizure in violation of the Fourth Amendment.

Trooper Hagen moved for summary judgment, which the district court granted. The court concluded that Ziesmer had been unable to substantiate his injury claims and that it was damning to Ziesmer's case that he "presented no expert witnesses to opine as to his medical condition, either at the time of incident or thereafter." Trooper Hagen's medical expert, however, had examined Ziesmer and his medical records and concluded that "[t]here appears to be no orthopedic reason why [Ziesmer] has ongoing discomfort and, certainly, the paucity of objective findings to substantiate his ongoing subjective symptoms suggests that he has incurred no permanent injury." The court ruled that any injury that had been sustained by Ziesmer was de minimis, and thus

under <u>Chambers v. Pennycook</u>, 641 F.3d 898, 907 (8th Cir. 2011), Trooper Hagen was entitled to qualified immunity.[2]

## II. Discussion

"We review a district court's grant of summary judgment de novo, viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party." <u>Reed v. City of St. Charles, Mo.</u>, 561 F.3d 788, 790 (8th Cir. 2009).

### 1. Proof of injury

Government officials are shielded from liability for civil damages so long as they did not violate a clearly established right that a reasonable person would have known. <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982). In a claim of excessive force resulting in a violation of the Fourth Amendment, "[t]he dispositive question is whether the officer's conduct was objectively reasonable under the circumstances, as judged from the perspective of a reasonable officer on the scene at the time the force was applied." <u>Chambers</u>, 641 F.3d at 907. Prior to this court's decision in <u>Chambers</u>, "a reasonable officer could have believed that as long as he did not cause more than *de minimis* injury to an arrestee, his actions would not run afoul of the Fourth Amendment." <u>Id.</u> at 908.

We agree with the district court's conclusion that "[t]he contusions and scrapes Ziesmer suffered did not require any medical attention, resolved themselves without any medical intervention, and were therefore de minimis." <u>Ziesmer v. Hagen</u>, No. 12-3031, 2014 WL 1847600, at *3 (D. Minn. May 8, 2014) (citing <u>Her v. Johnson</u>, No. 11-1490, 2012 WL 3541817, at *3 (D. Minn. Aug. 10, 2012) ("Bruises,

---

[2]The incident in question occurred nearly a year before the decision was issued in <u>Chambers</u>.

-6-

a small cut on the forehead, and amorphous 'pain' do not rise to the level of injury that was required before Chambers to support an excessive-force claim.")). We also agree with the court's determination that Ziesmer's claims of anxiety and depression were insufficiently substantiated as he had presented no medical records at all with regard to these afflictions.

However, the district court erred in ruling at the summary judgment stage that "the neck and back injuries Ziesmer alleges are not properly substantiated." The record demonstrates that Ziesmer saw at least twelve medical providers and physical therapists over the course of three years; attended eighteen different physical-therapy sessions; received an MRI, a CT scan, and multiple x-rays; and maintained that he was experiencing pain in his neck throughout those three years. During his physical-therapy sessions a subjective questionnaire assessed him as a 56 percent on the Neck Disability Index. One doctor observed that Ziesmer's cervical x-rays showed "diminished motion" and "diminished contralateral rotation" at certain vertebrae; another documented "disc osteophyte complex with endplate ridging" and "mild disc bulging."

There is also evidence in the record that casts doubt on Ziesmer's claims regarding the extent of his injury. Ziesmer several times let months (and in one instance, years) go by before seeking the next phase of treatment. Another treating physician wrote that the aforementioned disc degeneration "is often an incidental finding" and that there was "no evidence of substantial problems at that level." Trooper Hagen's expert witness, Dr. Jack Drogt, opined after reviewing the records and examining Ziesmer himself, that Ziesmer had "incurred no permanent injury."

On a summary judgment motion, however, the court must view the facts "in a light most favorable to the non-moving party—as long as those facts are not so 'blatantly contradicted by the record . . . that no reasonable jury could believe' them." Reed, 561 F.3d at 790 (quoting Scott v. Harris, 550 U.S. 372, 380 (2007)). Ziesmer

alleges chronic pain and limited mobility in his neck that has not abated after three years of seeking treatment—an injury, if proven, that is more than de minimis. See Copeland v. Locke, 613 F.3d 875, 881 (8th Cir. 2010). In Ziesmer's case there is a material question of fact regarding the seriousness of Ziesmer's injuries, pitting Ziesmer's account of his neck problems against the defendant's expert witness. It is a task for a jury to weigh Ziesmer's version of events against Trooper Hagen's and to compare Ziesmer's medical records and subjective assessment of pain against Trooper Hagen's medical-expert testimony. This weighing involves a credibility determination that is not appropriate at the summary judgment phase. See Hedges v. Poletis, 177 F.3d 1071, 1074 (8th Cir. 1999). "While a jury may credit the [trooper's] assertions and disbelieve [Ziesmer] at trial, it is not our function to remove the credibility assessment from the jury." Johnson v. Carroll, 658 F.3d 819, 827 (8th Cir. 2011) (quotation omitted).

The district court concluded, additionally, that "[e]ven if Ziesmer had established that the shoulder or neck injuries he alleges were more than de minimis, he has failed to provide any evidence linking those alleged injuries to Trooper Hagen's conduct." In Copeland v. Locke, the Appellant claimed "he ha[d] continuing pain in his knee and [could not] walk as well as he could before" a police officer had thrown him on the ground during an arrest. Id. at 878. This court ruled that

> Although the [officer–defendant] presented expert testimony tending to show that [Appellant's] injuries were a direct result of his pre-existing condition [with his knee], such testimony is for the jury to weigh, and not the judge on summary judgment. Thus, there is a material question of fact regarding whether [Appellant's] injuries are the result of excessive force, and the court erred in resolving that factual dispute against [Appellant].

Id. at 882. It is true that "[w]hen an injury is sophisticated, proof of causation generally must be established by expert testimony." Robinson v. Hager, 292 F.3d

560, 564 (8th Cir. 2002). However, "[a] causal connection between an event and an injury may be inferred in cases in which a visible injury or a sudden onset of an injury occurs." Id. (quoting Turner v. Iowa Fire Equip. Co., 229 F.3d 1202, 1210 (8th Cir. 2000)).

Given that Ziesmer claims he began experiencing neck pain shortly after the alleged altercation with Trooper Hagen, and given that there is no evidence suggesting he experienced any such pain before August 2010, a layperson could conclude that Ziesmer's symptoms were caused by the trauma to his neck and back. See also Hill v. Gonzalez, 454 F.2d 1201, 1203 (8th Cir. 1972) (noting that "expert testimony is not necessary" to prove causation when the "inferences to be drawn from the facts are within the range of common experience" of the jury members (quotation omitted)); cf. Saunders v. Frost, 124 F. App'x 468, 469 (8th Cir. 2005) (agreeing that the plaintiff's knee injury was sophisticated, requiring an expert witness to prove causation, because his knee "had a long medical history marked by earlier traumas and an earlier surgery"). Injuries such as those claimed by Ziesmer are "within the range of common experience," and the lack of a medical expert on this issue is not fatal to his claim at this stage of the proceedings.

2. Unreasonable seizure

The district court ruled, as an initial matter, that there was "no dispute that Hagen was justified in demanding Ziesmer exit the car or in effecting Ziesmer's brief detention." Because "the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it," Graham v. Connor, 490 U.S. 386, 396 (1989), the court determined that "[t]he only issue in this case is whether the amount of force Hagen used was excessive and whether his use of that force violated Ziesmer's clearly established rights."

However, Ziesmer contests this initial conclusion, arguing that no force at all was justified given the facts of the situation. During oral argument the parties disputed whether this claim had been properly presented and maintained in front of the district court. Based on his initial Complaint as well as his Memorandum in Opposition to Hagen's Motion for Summary Judgment, it appears that Ziesmer did advance this position—that the seizure was unreasonable, and thus no force was justified. We are reluctant to address an issue when it has not first been addressed by the trial court. On remand, the district court will be in a position to determine whether this claim was properly presented and, if so, whether Trooper Hagen lawfully detained Ziesmer.

## III. Conclusion

We reverse the district court's grant of summary judgment and remand for proceedings consistent with this opinion, including a ruling on Ziesmer's unreasonable-seizure claim.

_____