# United States Court of Appeals

## For the Eighth Circuit

_____

No. 17-2884

_____

Thompson L. Awnings, formerly known as Tristan Simon

*Plaintiff - Appellant*

v.

Joshua Fullerton; Ryan Duncan

*Defendants - Appellees*

Jeremy Carther; Todd Roberts

*Defendant*s

Tarvis Banks; 1-10 Does

*Defendants - Appellees*

_____

Appeal from United States District Court
for the District of Nebraska - Lincoln

_____

Submitted: May 16, 2018
Filed: January 4, 2019

_____

Before SMITH, Chief Judge, BEAM and COLLOTON, Circuit Judges.

_____

SMITH, Chief Judge.

Thompson Awnings sued, among others, Officers Joshua Fullerton, Ryan Duncan, and Tarvis Banks of the Lincoln Police Department (LPD) under 42 U.S.C. § 1983 in their individual capacities. Awnings's suit alleged multiple constitutional violations by the officers, including false arrest, excessive force, and denial of medical care. He claims the district court[1] erred by: (1) refusing to disqualify the entire City of Lincoln Attorney's Office; (2) granting qualified immunity to Officers Fullerton and Duncan; and (3) dismissing Officer Banks from Awnings's suit pursuant to Federal Rule of Procedure 12(b)(6). We affirm.

I. *Background*
A. *Awnings's Arrest*[2]

On an early morning in July 2013, Officers Fullerton and Duncan of the LPD encountered Damien Wilkins on a sidewalk in Lincoln. The officers questioned Wilkins about his possible involvement with criminal activity. Awnings, Wilkins's companion, inserted himself into the conversation and began asking the officers why they were questioning Wilkins. Officer Fullerton informed Awnings that the officers were conducting law enforcement business with Wilkins. Officer Fullerton then told

---

[1]The Honorable Richard G. Kopf, United States District Judge for the District of Nebraska.

[2]Although Awnings disputed the defendants' version of the events, the district court found that most of the defendants' statements of material facts did not controvert Awnings's own recitation. *See* Mem. & Order at 7–23, *Awnings v. Fullerton*, No. 4:15-cv-03078-RGK-CRZ (D. Neb. Apr. 24, 2017), ECF No. 133 ("Qualified Immunity Order"). Upon review, we find that the parties' versions of events largely do not controvert each other, and we recite here only the undisputed facts. *See Morris v. City of Chillicothe*, 512 F.3d 1013, 1018 (8th Cir. 2008) (standard of review) (citation omitted).

Awnings, who had been drinking, that he could wait for his friend a short distance away, if he wished.

Unsatisfied, Awnings—now obviously angry and agitated—refused the direction to step away. Awnings then, in an expletive-laced exclamation, declared that "[h]e would protect his buddy" and that he was "not going anywhere." Qualified Immunity Order at 9. Awnings was several feet from Officer Fullerton, and the officer instructed Awnings to step away from the officers. Awnings again refused, asking, "Why should I leave?" *Id.* at 9. Officer Fullerton answered that Awnings was interfering with an investigation and that his behavior distracted them from their work. Awnings uttered another expletive and told the officer, "I am staying right here." *Id.* Officer Fullerton—for the third time—asked Awnings to leave the immediate area; Officer Fullerton reinforced his request by warning Awnings that if he refused, he would go to jail. In response, Awnings again blurted out the same expletive, followed by "I'll kick your ass." *Id.*

At that point, Officer Fullerton informed Awnings that he was under arrest and commanded Awnings to place his hands behind his back. Awnings refused, telling Officer Fullerton, "I'm gonna kick your [expletive] ass." *Id.* Officer Fullerton then "reached out and grabbed onto [Awning's] arm and wrist, but then [Awnings] stiffened his arm and began to pull away. Officer Fullerton again told [Awnings] he was under arrest and to stop resisting and [Awnings] continued to resist and pull away." *Id.* at 10. The officer then executed a hip toss maneuver, which put Awnings "on his back on the ground with Officer Fullerton on top of him." *Id.* The two men began to fight. Officer Jon-Eric Meyer, who had arrived at the scene, joined with Officer Duncan and came to Officer Fullerton's assistance. As the officers attempted to handcuff Awnings, he resisted, "actively kicking and punching at the officers." *Id.* Awnings then

> hook[ed] his hand under Officer Duncan's LPD uniform shirt and
> [brought] his hand up to the collar, grabbing onto the body armor and

undershirt as well as his collar. [Awnings] used this hold . . . to try to pull Officer Duncan to the ground with force, causing the collar to cinch around Officer Duncan's neck.

*Id.* Meanwhile, "Officer Duncan gave numerous commands for [Awnings] to let go" and to put his hands behind his back. *Id.* Awnings ignored the directive and continued to tighten his grip on Officer Duncan's shirt collar, and the officer "tried to strike [Awnings] a couple of times" to induce Awnings to release his grasp. *Id.* at 11. Awnings pinned Officer Duncan to the ground.

Officer Duncan yelled to his colleagues for help. Awnings eventually released Officer Duncan's shirt, and the officers then rolled Awnings onto his stomach and handcuffed him. Awnings refused to walk to the police cruiser. Officer Jeremy Carther from the University of Nebraska–Lincoln Police Department arrived and assisted the LPD officers in placing Awnings on his back in the backseat of the cruiser. Awnings continued to resist and yell profanities. Awnings kicked Officer Carther in the chest twice. At that point, Officers Fullerton, Meyer, and Carther removed Awnings from the cruiser and called for a vehicle with a "full backseat cage." *Id.* at 11. Awnings continued to resist the officers, and when a police vehicle equipped with the full cage arrived, Officer Chris Howard placed Awnings in leg restraints. The officers then placed Awnings into the police cruiser. Officer Duncan sustained minor injuries from the scuffle.

B. *Awnings's Transport to the Detention Center*[3]

Awnings sustained visible injuries during his arrest. Because he was bleeding, the LPD officers called for an ambulance to transport Awnings to the Bryan West Medical Center ("the Hospital"). Officer Howard accompanied Awnings in the ambulance. At the Hospital, Awnings told the examining physician that he believed he had one or more fractured ribs. The doctor ordered a chest X-ray, which revealed no rib fracture. The doctor pronounced Awnings fit for incarceration, but he ordered a follow-up examination at the Hospital within one to two days. Officer Banks, who had relieved Officer Howard during Awnings's examination at the Hospital, then transported Awnings to the Lancaster County Jail. Officer Banks neglected to inform jail personnel of the doctor's request for a follow-up appointment with Awnings; he "simply informed jail personnel that [Awnings] had been to the emergency room and had been deemed fit for confinement." Mem. & Order at 3, *Awnings v. Fullerton*, No. 4:15-cv-03078-RGK-CRZ (D. Neb. Jan. 20, 2016), ECF No. 40.

C. *District Court and Other Proceedings*

Awnings's scuffle with the LPD led to several, subsequent state criminal charges.[4] Awnings pleaded no contest to two of the charges, and the District Court of Lancaster County, Nebraska, sentenced him to two consecutive 90-day jail terms. The Nebraska Court of Appeals upheld Awnings's convictions.

---

[3]We recite these facts as alleged in Awnings's complaint and assume them to be true. *See Zink v. Lombardi*, 783 F.3d 1089, 1098 (8th Cir. 2015) (en banc) (per curiam) ("We review a district court's grant of a motion to dismiss . . . de novo. We assume all facts in the complaint to be true, and draw all reasonable inferences in favor of the non-moving party." (citations omitted)).

[4]These charges included assault on an officer in the third degree, in violation of Neb. Rev. Stat. § 28-931, assault in the third degree, in violation of Neb. Rev. Stat. § 28-310(1), and resisting arrest, in violation of Neb. Rev. Stat. § 28-904(1).

After his state convictions, Awnings filed a lawsuit in federal court pursuant to 42 U.S.C. § 1983, alleging, among other things, that Officer Fullerton arrested Awnings without probable cause and that Officers Fullerton and Duncan used excessive force in effecting his arrest. Awnings also alleged that Officer Banks—because of his failure to inform jail personnel of the Hospital doctor's request for a follow-up examination—deprived him of his right to be free from unreasonable seizures under the Fourth Amendment. Awnings also claimed that Officer Banks's conduct amounted to a denial of medical care, violating his due process rights under the Fourteenth Amendment.

Elizabeth Elliott, an attorney employed by the City of Lincoln Attorney's Office (CLAO), initially represented the LPD officers. In that capacity, she filed a notice of intent to serve subpoena duces tecum with the district court. Elliott previously had worked in the Lancaster County Public Defender's Office (LPDO). In fact, Elliott worked as an attorney in that office while the LPDO defended Awnings's state criminal charges. Awnings objected to the notice, and Elliott moved to withdraw from the case upon discovering the potential conflict. Awnings then moved to disqualify the entire CLAO, claiming Elliott's employment at the LPDO while that office represented Awnings created a conflict of interest that could prejudice his civil suit against the officers.

The magistrate judge considered Awnings's motion and found that while employed with the LPDO, Elliott "did not represent [Awnings], never appeared with [Awnings] in court, and never spoke to him about his case. She [did] not recall [Awnings] or the underlying facts of his state criminal case. She was never 'actively involved' in [Awnings's] underlying state criminal case." Mem. & Order at 3, *Awnings v. Fullerton*, No. 4:15-cv-03078-RGK-CRZ (D. Neb. Oct. 14, 2015), ECF No. 26 (citation omitted). And Awnings pleaded no contest to the criminal charges after Elliott left the LPDO. The CLAO assured the court that "Elliott has no confidential information regarding [Awnings] and as such, has not divulged any

-6-

confidential information to [the CLAO] about [Awnings] or his criminal case." *Id.* at 4. Further, the CLAO had screened Elliott from any further work in Awnings's case. Finding no imputed conflict of interest stemming from Elliott's prior employment at the LPDO, the magistrate judge denied Awnings's motion to disqualify the entire CLAO. The district court affirmed the magistrate judge's order.

Officers Banks, Duncan, and Fullerton moved to dismiss Awnings's § 1983 suit under Federal Rule of Civil Procedure Rule 12(b)(6). The district court partially granted the motion and dismissed Officer Banks from the suit. Officers Duncan and Fullerton subsequently filed a motion for summary judgment, which the district court granted. The court concluded that the *Heck*[5] doctrine barred Awnings from claiming false arrest. But even if *Heck* did not foreclose Awnings's false arrest claim, the district court determined that Officers Duncan and Fullerton had probable cause to arrest Awnings. Further, the court concluded that the officers' use of force was "objectively reasonable under the circumstances and did not violate [Awnings's] constitutional rights." Qualified Immunity Order at 34. The district court then granted summary judgment to the officers. The court held that the officers were entitled to qualified immunity and dismissed both the false arrest and the excessive force claims.

## II. *Discussion*

In this appeal, Awnings claims the district court erred by: (1) failing to disqualify the entire CLAO; (2) granting qualified immunity to Officers Duncan and Fullerton; and (3) granting Officer Banks's Rule 12(b)(6) motion. We disagree and affirm.

### A. *Disqualification of the CLAO Attorneys*

Awnings argues that Elliott's employment with the LPDO prior to joining the CLAO raises a conflict of interest. Furthermore, he contends that Elliott's conflict

---

[5]*Heck v. Humphrey*, 512 U.S. 477 (1994).

should be imputed to the entire CLAO and that the district court should have granted Awnings's motion to disqualify. We review the district court's denial of attorney disqualification for abuse of discretion. *See United States v. Kehoe*, 310 F.3d 579, 590 (8th Cir. 2002) (citing *Fred Weber, Inc. v. Shell Oil Co.*, 566 F.2d 602, 605–06 (8th Cir. 1977)). "Because of the potential for abuse by opposing counsel, 'disqualification motions should be subjected to particularly strict scrutiny.'" *Macheca Transp. Co. v. Phila. Indem. Ins. Co.*, 463 F.3d 827, 833 (8th Cir. 2006) (quoting *Harker v. Comm'r*, 82 F.3d 806, 808 (8th Cir. 1996)). "[W]e apply the same rules governing the professional conduct of attorneys that the district court has adopted." *Harker*, 82 F.3d at 808 (citing *Blair v. Armontrout*, 916 F.2d 1310, 1333 (8th Cir. 1990)). The moving party bears the burden of proving that disqualification is required. *See A.J. by L.B. v. Kierst*, 56 F.3d 849, 859 (8th Cir. 1995) (citing *Duncan v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.*, 646 F.2d 1020, 1028 (5th Cir. 1981)).

Under its general rules, the district court does not "adopt other codes of professional responsibility or ethics." NEGenR 1.7(b)(2)(A). But, "the court may consult other codes of professional responsibility or ethics to determine whether a lawyer has engaged in conduct unbecoming of a member of the bar." NEGenR 1.7(b)(2)(B); *cf. Malone v. Kantner Ingredients, Inc.*, No. 4:12CV3190, 2013 WL 5524548, at *7 (D. Neb. Oct. 3, 2013) ("When analyzing motions to disqualify, this court refers to the Nebraska Rules of Professional conduct."). In this case, the magistrate judge cited *State v. Kinkennon*, 747 N.W.2d 437 (Neb. 2008), as the basis for denying Awnings's motion to disqualify the entire CLAO. The district court subsequently affirmed the magistrate judge.

In *Kinkennon*, a Nebraska court appointed an attorney from a private law firm to represent a defendant in a criminal case. *Id.* at 441. During the pendency of the case, another attorney from the law firm began employment as a deputy county attorney. *Id.* The defendant then moved to disqualify the entire county attorney's office, asking the state court to appoint a special prosecutor. *Id.* The state court denied

the defendant's motion. The Nebraska Supreme Court, after rejecting a per se rule of disqualification, affirmed the trial court and explained:

> We recognize that complete disqualification of a prosecutor's office may be warranted in cases where the appearance of unfairness or impropriety is so great that the public trust and confidence in our judicial system simply could not be maintained otherwise. Such an extreme case might exist, even where the State has done all in its power to establish an effective screening procedure precluding the individual lawyer's direct or indirect participation in the prosecution. But when the disqualified attorney is effectively screened from any participation in the prosecution of the defendant, the prosecutor's office may, in general, proceed with the prosecution.

*Id.* at 444 (footnote omitted).

Awnings says the district court erroneously relied on *Kinkennon* and contends that our prior decision, *State of Arkansas v. Dean Foods Products Co.*, 605 F.2d 380 (8th Cir. 1979), *overruled on other grounds*, *In re Multi-Piece Rim Products Liability Litigation*, 612 F.2d 377 (8th Cir. 1980), compels reversal of the district court. He is wrong. As we explained,

> [i]n *Dean Foods Products*, this court affirmed a district court order disqualifying an Assistant Attorney General from taking part in an antitrust action against a defendant that was being represented by his former law firm. Moreover, the court disqualified those members of the Attorney General's staff who had actively participated in the case under the supervision of the disqualified attorney. *The court explicitly reserved judgment on whether the conflict should have resulted in the imputed disqualification of the entire Attorney General's office.*

*Blair*, 916 F.2d at 1332 (emphasis added) (citations omitted). Thus, *Dean Foods Products* does not command the disqualification of an entire attorney's office even

when an attorney in that office possesses confidential information about the defendant. Rather, it is satisfactory that the attorney and the staff supervised by the attorney be disqualified and appropriately screened.

We find no conflict between *Kinkennon* and *Dean Foods Products*, and neither decision supports disqualifying the entire CLAO in Awnings's civil case. When the potential for a conflict became known, Elliott moved to recuse herself from the case out of caution. She did not represent Awnings in his state criminal proceedings, did not recall Awnings or his criminal case, and was never actively involved in the criminal proceedings. Awnings pleaded no contest to the criminal charges after Elliott departed the LPDO. Aside from filing the notice of intent to serve a subpoena duces tecum, the CLAO screened Elliott from further participation in Awnings's case. While Awnings suggested that Elliott might have imparted confidential information regarding his criminal case to the CLAO, *see* Appellant's Br. at 16–17, "[g]eneral assertions that an attorney possesses knowledge of a party's 'trade secrets, trial strategies, negotiation strategies, legal theories or business practices' are not typically sufficient and can be overcome by an attorney affidavit stating the attorney has no knowledge of such items." *Infogroup, Inc. v. DatabaseLLC*, No. 8:14CV49, 2016 WL 2350113, at *2 (D. Neb. May 4, 2016) (citing *Jacob N. Printing Co. v. Mosley*, 779 N.W.2d 596, 602 (Neb. 2010)). Awnings only presented conjecture to support his assertion that Elliott possessed confidential information regarding his case. Elliott, on the other hand, submitted an affidavit claiming no knowledge of the case from her previous employment.

Because Awnings failed in his burden to show the necessity of disqualifying of the entire CLAO, we find no abuse of discretion in the district court's denial of Awnings's motion to disqualify. *See A.J. by L.B.*, 56 F.3d at 859 (citation omitted).

-10-

## B. *Qualified Immunity*

Next, Awnings claims the district court erred when it granted qualified immunity to Officers Duncan and Fullerton because the district court erroneously: (1) excluded Awnings's statements about his medical condition; (2) admitted affidavits from the LPD officers; and (3) ignored material fact disputes raised by Awnings. "We review the district court's grant of summary judgment de novo, and may affirm the district court on any basis supported by the record." *Figg v. Russell*, 433 F.3d 593, 597 (8th Cir. 2006) (citing *Wilson v. Spain*, 209 F.3d 713, 716 (8th Cir. 2000); *Gonzales-Perez v. Harper*, 241 F.3d 633, 638 n.6 (8th Cir. 2001)). We review the district court's admission of evidence for summary judgment purposes under an abuse-of-discretion standard. *Gannon Int'l., Ltd. v. Blocker*, 684 F.3d 785, 793 (8th Cir. 2012) (citing *Warner Bros. Entm't, Inc. v. X One X Prods.*, 644 F.3d 584, 591 (8th Cir. 2011)). We address each of Awnings's claims in turn.

### 1. *Evidentiary Rulings*

Awnings claims that the district court erred in excluding statements he made about his medical examination at the Hospital after his release from jail. He also asserts that the court erred in admitting affidavits from Officers Fullerton, Duncan, Meyer, Howard, and one other officer of the LPD and from Officer Carther from the University of Nebraska–Lincoln Police Department.

Awnings submitted a declaration stating that following his release from jail, he visited a physician at the Hospital, who diagnosed him with four broken ribs and a collapsed lung. The district court excluded Awnings's medical condition statement because the "[examining] physician [was] not identified, the diagnoses [were] hearsay, and there [was] no medical evidence to establish a causal link to" Awning's encounter with the LPD. Qualified Immunity Order at 22 n.22. Awnings says that at the summary judgment stage, he need not present evidence in a trial-ready form. He contends that he could have called the examining physician to testify at trial. Further, he asserts that he was not required to disclose the physician's name, especially when

-11-

the doctor's identity was readily discernible from the record. Lastly, Awnings, citing *Ziesmer v. Hagen*, 785 F.3d 1233 (8th Cir. 2015), argues that because his injuries were not sophisticated and within the range of common experience, he was not required to produce an expert witness to prove causation. We disagree.

In *Ziesmer*, a police search of an individual turned into a physical altercation. *Id.* at 1236. The trooper "tackled the [plaintiff, Ziesmer,] to the ground and dug his knee into [Ziesmer's] back, while pulling Ziesmer's hands behind his back, causing his shoulder to pop out of its socket. Trooper Hagen popped Ziesmer's shoulder back into its socket." *Id.* "Immediately after the incident Ziesmer reports that he had bruising and scrapes on his face and a large knot on the back of his head. He took pictures of his bruised face when he got home." *Id.* Ziesmer also sustained a welt on his head. *Id.* We reversed the district court's conclusion that Ziesmer needed to produce a medical expert to opine on Ziesmer's condition, reasoning:

> It is true that "[w]hen an injury is sophisticated, proof of causation generally must be established by expert testimony." *Robinson v. Hager*, 292 F.3d 560, 564 (8th Cir. 2002). However, "[a] causal connection between an event and an injury may be inferred in cases in which a visible injury or a sudden onset of an injury occurs." *Id.* (quoting *Turner v. Iowa Fire Equip. Co.*, 229 F.3d 1202, 1210 (8th Cir. 2000)).

> Given that Ziesmer claims he began experiencing neck pain shortly after the alleged altercation with Trooper Hagen, and given that there is no evidence suggesting he experienced any such pain before [the incident with the trooper], a layperson could conclude that Ziesmer's symptoms were caused by the trauma to his neck and back. *See also Hill v. Gonzalez*, 454 F.2d 1201, 1203 (8th Cir. 1972) (noting that "expert testimony is not necessary" to prove causation when the "inferences to be drawn from the facts are within the range of common experience" of the jury members (quotation omitted)); *cf. Saunders v. Frost*, 124 Fed. Appx. 468, 469 (8th Cir. 2005) (agreeing that the plaintiff's knee injury was sophisticated, requiring an expert witness to prove causation,

because his knee "had a long medical history marked by earlier traumas and an earlier surgery"). Injuries such as those claimed by Ziesmer are "within the range of common experience," and the lack of a medical expert on this issue is not fatal to his claim at this stage of the proceedings.

*Id.* at 1239 (first and second alterations in original).

Here, Awnings's alleged injuries—fractured ribs and a collapsed lung—were internal and required sophisticated medical tools to diagnose accurately. As such, Awnings's non-visible alleged injuries are not within the range of common experience where inferences may be made with confidence. Further, Awnings's visit to the Hospital immediately after his arrest showed no fractured ribs or a collapsed lung. In the absence of medical evidence, only Awnings's own allegations remain. But, "[a] plaintiff may not merely point to unsupported self-serving allegations, but must substantiate allegations with sufficient probative evidence that would permit a finding in the plaintiff's favor." *Davidson & Assocs. v. Jung*, 422 F.3d 630, 638 (8th Cir. 2005) (citing *Wilson v. Int'l Bus. Mach. Corp.*, 62 F.3d 237, 241 (8th Cir. 1995)); *see also Bacon v. Hennepin Cty. Med. Ctr.*, 550 F.3d 711, 716 (8th Cir. 2008) ("[A] properly supported motion for summary judgment is not defeated by self-serving affidavits." (alteration in original) (quoting *Gander Mountain Co. v. Cabela's, Inc.*, 540 F.3d 827, 831 (8th Cir. 2008))). Thus, in contrast to *Ziesmer*, without probative medical evidence, Awnings can establish neither severity of injury nor causation. This evidentiary void is fatal to Awnings's claim. We find no abuse of discretion in the district court's conclusion that Awnings failed to present evidence of a causal link between his alleged injuries and his encounter with the law enforcement officers.

Awnings also challenges the district court's decision to admit affidavits from the officers, contending that the affidavits should have been excluded because the officers do not state that they had personal knowledge of "any of the facts [they] recited, and "the affidavit[s] do[] not establish that [the officers] would be competent

to testify as to the objectionable portions." Appellant's Br. at 39. Awnings cites to no authority that the affidavits must expressly state they came from personal knowledge, and we decline to endorse the kind of formalism that Awnings propounds. The district court found that the officers' statements were based on personal knowledge and overruled Awnings's objections. *See* Qualified Immunity Order at 4 n.1. In his objections, Awnings presented no arguments or evidence why the officers would not be competent to testify at a trial. We find no abuse of discretion and affirm the district court's evidentiary rulings.

## 2. *False Arrest*

Awnings contests the district court's conclusion that the *Heck* doctrine barred his false arrest claim. He also challenges the district court's alternative ruling—that even if *Heck* does not bar Awnings's claim, Officers Duncan and Fullerton had probable cause to arrest Awnings. We need not address Awnings argument that the district court misapplied *Heck* because the officers had probable cause to arrest him for obstruction of a peace officer.

Awnings argues that at the beginning of his encounter with Officers Fullerton and Duncan, he did not resist. The record, however, does not support Awnings's contention. According to Awnings, Officer Fullerton "yelled at him to shut up and pointed to a direction behind him." Qualified Immunity Order at 17. Awnings averred that he could not hear Officer Fullerton and he "yelled back at [Officer] Fullerton." *Id.* at 18. Officer Fullerton then "grabbed [Awnings's] right arm and started to yank it." *Id.* "Awnings [then] recoiled and tried to get his arm loose." *Id.* Awnings does not dispute that Officers Fullerton and Duncan were conducting law enforcement business with his companion, that Officer Fullerton pointed Awnings away from the scene, or that he refused to comply. At that point, Officer Fullerton grabbed Awnings, and Awnings pulled away.

-14-

Under Nebraska law, Awnings's admitted conduct qualified as obstruction of a peace officer and resisting arrest. "A person commits the offense of obstructing a peace officer, when, by . . . physical interference, or obstacle, he . . . intentionally obstructs, impairs, or hinders . . . the enforcement of the penal law or the preservation of the peace by a peace officer . . . acting under color of his . . . official authority." Neb. Rev. Stat. § 28-906(1)(a). Here, Awnings acknowledged that Officer Fullerton was initially at least five feet from him, but Officer Fullerton moved closer during their encounter. Officer Fullerton had previously told Awnings "that it was none of [Awnings's] business, and that if he wanted to wait for Wilkins he could do so at some distance away." Qualified Immunity Order at 16–17. Awnings refused to move back. Officer Fullerton subsequently gestured to Awnings to move away by waving. But Awnings again refused to move and "yelled back at [Officer] Fullerton." *Id.* at 18. Awnings's does not deny yelling, "[Expletive] you, I am staying right here" and "[Expletive] you, I'll kick your ass." *Id.* at 9. Awnings's conduct constituted obstruction of a peace officer. *See State v. Rosado*, No. A-09-014, 2009 WL 3381652, at *2 (Neb. Ct. App. Oct. 20, 2009) (holding that pounding chest, saying "shoot me, [expletive]," and being in close proximity to peace officer attempting to arrest another individual was obstructing a peace officer under Nebraska law); *State v. Chapman*, No. A-92-451, 1993 WL 100146, at *5 (Neb. Ct. App. Apr. 6, 1993) (holding that under the Nebraska obstruction statute, a defendant "could 'threaten to use force or violence' with words, such as telling [the officer] he 'was going to kick [his] ass'" (second alteration in original)); *see also Ehlers v. City of Rapid City*, 846 F.3d 1002, 1009 (8th Cir. 2017) (concluding that "[r]efusing to comply with a police officer's orders can constitute obstruction" under a similar South Dakota statute (citation omitted)).

Based on Awnings's obstruction, Officer Fullerton had probable cause to arrest. With probable cause, it was unnecessary for Officer Fullerton to issue a "verbal advisement of an attempted arrest"; rather, "actions to effectuate physical control over [the defendant] [are sufficient to] constitute[] an attempt to arrest." *State*

*v. Heath*, 838 N.W.2d 4, 17 (Neb. Ct. App. 2013) (first alteration in original) (citation omitted). By grabbing Awnings's arm, Officer Fullerton attempted to effectuate physical control over Awnings. Awnings resisted by pulling away. Awnings's ensuing fight with the officers is undisputed.

### 3. *Excessive Force*

Awnings also faults the district court for granting qualified immunity to Officers Fullerton and Duncan on his excessive force claim. He argues genuine disputes of material facts preclude the court's grant of qualified immunity.

"To determine whether a particular use of force was excessive, the court considers whether it was objectively reasonable under the circumstances, relying on the perspective of a reasonable officer present at the scene, rather than the 20/20 vision of hindsight." *Ehlers*, 846 F.3d at 1011 (cleaned up). "Force is excessive when an officer's actions are not objectively reasonable in light of the facts and circumstances confronting him." *Kukla v. Hulm*, 310 F.3d 1046, 1050 (8th Cir. 2002) (citing *Guite v. Wright*, 147 F.3d 747, 750 (8th Cir. 1998)). "When an arrestee flees or resists, some use of force by the police is reasonable." *Greiner v. City of Champlin*, 27 F.3d 1346, 1355 (8th Cir. 1994) (citing *Foster v. Metro. Airports Comm'n*, 914 F.2d 1076, 1082 (8th Cir. 1990)). "[E]vidence of only *de minimis* injury [does not] foreclose[] a claim of excessive force under the Fourth Amendment." *Chambers v. Pennycook*, 641 F.3d 898, 906 (8th Cir. 2011). "[I]t is logically possible to prove an excessive use of *force* that caused only a minor *injury* . . . ." *Id.* We "focus instead on whether *the force applied* is reasonable from the perspective of a reasonable officer on the scene at the time the force is used." *Id.* (citing *Graham v. Connor*, 490 U.S. 386, 396 (1989)).

We agree with the district court that Awnings showed no genuine disputes of material fact between his version of events and the officers' version. Here, the record shows that Officer Fullerton executed a takedown maneuver after Awnings resisted

arrest for obstruction under Nebraska law. Awnings alleged that officers joined in beating him, but Officers Fullerton and Duncan's evidence—uncontroverted by Awnings—showed an uncooperative and bellicose Awnings who resisted arrest by swinging and kicking at the officers.[6] Also of note, Awnings contends that at least four officers physically attacked him. But, according to the proof of record, Awnings sustained only a *de minimis* injury—a small laceration over his right eyebrow. *See Ellison v. Lesher*, 796 F.3d 910, 917 (8th Cir. 2015) ("Our cases characterize relatively minor scrapes, bruises, and contusions as *de minimis*." (citing *Ziesmer*, 785 F.3d at 1236–37; *Wertish v. Krueger*, 433 F.3d 1062, 1066–67 (8th Cir. 2006))). Officer Duncan also suffered non-serious injuries during his attempt to subdue Awnings.

Here, other than generic assertions, Awnings's statements "do not give the slightest hint about the amount of force the officer[s] used or why the amount of force was unreasonable in light of [his] persistent efforts to [resist] the police." *Edwards v. Giles*, 51 F.3d 155, 157 (8th Cir. 1995) (citation omitted) (concluding that assertions such as the officers "threw [plaintiff] to the ground" or plaintiff "was thrown to the ground forcibly" are "abstract assertions [that] tell us nothing more than that one officer used some physical power to move [the plaintiff to the ground"). Reviewing the facts in the light most favorable to Awnings, he has failed to show that Officers Fullerton and Duncan used unreasonable force to arrest him. *See Ehlers*, 846 F.3d at 1010–11. Officers Fullerton and Duncan are entitled to qualified immunity.

---

[6]Awnings stated that he pulled his arm back when Officer Fullerton first grabbed his arm; that after Officer Fullerton's takedown, Awnings tried to get Officer Fullerton off and to get away from the officer; that he tried to curl his body into a ball (thereby making it difficult for the officers to handcuff Awnings); and that he jumped out of the police vehicle after having been placed in the back seat. *See* Qualified Immunity Order at 18–20.

## C. *Motion to Dismiss*

Awnings contends that the district court erred in dismissing Officer Banks from the suit. Awnings argues that he adequately stated a claim for deliberate indifference to his serious medical needs. Awnings's allegation stemmed from Officer Banks's failure to inform the jail staff of Awnings's need for a follow-up visit with the Hospital. We review de novo the district court's grant of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Wong v. Minn. Dep't of Human Servs.*, 820 F.3d 922, 927 (8th Cir. 2016) (citation omitted). We assume the truth of Awnings's factual allegations, and "we construe the complaint in the light most favorable to the nonmoving party." *Id.* (quoting *Ritchie v. St. Louis Jewish Light*, 630 F.3d 713, 715–16 (8th Cir. 2011)).

The parties do not dispute that Officer Banks neglected to inform jail personnel of Awnings's need for a follow-up medical appointment. Awnings argues that his transport from the Hospital to the jail was part of his arrest; therefore his claim against Officer Banks necessarily implicates the Fourth Amendment. But, historically, in this circuit, claims of deliberate indifference to an arrestee's medical needs are "properly analyzed under the Due Process Clause of the Fourteenth Amendment." *Carpenter v. Gage*, 686 F.3d 644, 650 (8th Cir. 2012) (citations omitted). Unresolved is "the question whether the Fourth Amendment continues to provide individuals with protection against the *deliberate use of excessive physical force* beyond the point at which arrest ends and pretrial detention begins." *Graham*, 490 U.S. at 395 n.10 (emphasis added); *see also Chambers*, 641 F.3d at 905 ("We have noted the existence of a 'legal twilight zone' between arrest and sentencing, where it is *unclear whether excessive force claims are governed by the Fourth Amendment* or cases decided based on the Fourteenth Amendment and substantive due process." (emphasis added) (quoting *Wilson v. Spain*, 209 F.3d 713, 715 (8th Cir. 2000))). Awnings's claim against Officer Banks is a failure to provide adequate medical services—not an excessive force claim related to his arrest. Instead, Awnings claim against Officer Banks relates to the sufficiency of his post-arrest, post-medical examination, medical

care. It is true that we have not as yet "resolved whether an arrestee's claim alleging denial of medical care is analyzed under the Due Process Clause or the Fourth Amendment. *Bailey v. Feltmann*, 810 F.3d 589, 593 (8th Cir. 2016). We need not do so here. The facts distinguish this case from those arising from an allegation of excessive force. Factually, any alleged denial of medical care incident to Awnings's arrest ended when he actually received medical attention at the hospital. Awnings's claim against Officer Banks relates to Officer Banks's omission to convey the follow-up medical appointment ordered by the doctor—not from his participation in Awnings's arrest. In fact, Officer Banks did not participate in the arrest of Awnings. Unlike the plaintiff in *Carpenter*, Awnings was first transported for medical treatment before being taken to jail. On this record, our precedents favor analyzing Awnings's medical needs claim under Fourteenth Amendment standards.

Under the Fourteenth Amendment, "'[d]eliberate indifference' entails a level of culpability equal to the criminal law definition of recklessness, that is, a prison official 'must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Bender v. Regier*, 385 F.3d 1133, 1137 (8th Cir. 2004) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). "The standard for evaluating a substantive due process claim is whether the alleged 'behavior of the governmental officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'" *Schmidt v. City of Bella Villa*, 557 F.3d 564, 574 (8th Cir. 2009) (quoting *Rogers v. City of Little Rock*, 152 F.3d 790, 797 (8th Cir. 1998)). Here, Awnings sustained a small laceration, and his examining physician post-arrest declared Awnings fit for incarceration. Further, a chest X-ray showed no fractured ribs or lung damages. Under these circumstances, it cannot be said that Officer Banks's failure to inform the jail staff of Awnings's follow-up medical visit rises to the level of conduct that "shocks the contemporary conscience." *Id.* The district court correctly dismissed Awnings's claim against Officer Banks under Rule 12(b)(6).

III. *Conclusion*

We affirm.[7]

COLLOTON, Circuit Judge, concurring in part and concurring in the judgment.

I join all but Part II.C of the opinion of the court. As to Awnings's claim against Officer Banks, I disagree with the court's decision to declare that the claim is governed by the Due Process Clause. Whether the Fourth Amendment or the Due Process Clause governs the actions of Officer Banks during the period after Awnings was arrested but before a judicial officer determined probable cause to detain him is important doctrinally. The issue was not thoroughly briefed in this case. The answer is unnecessary to resolving this appeal. I would therefore refrain from deciding the point.

We said in *Bailey v. Feltmann*, 810 F.3d 589 (8th Cir. 2016), that "this court has not resolved whether an arrestee's claim alleging denial of medical care is analyzed under the Due Process Clause or the Fourth Amendment" and noted "a conflict in authority" on the question. The Seventh Circuit draws the line at a judicial determination of probable cause: "the Fourth Amendment governs the period of confinement between arrest without a warrant and the preliminary hearing at which a determination of probable cause is made, while due process regulates the period of confinement after the initial determination of probable cause." *Villanova v. Abrams*, 972 F.2d 792, 797 (7th Cir. 1992); *see Ortiz v. City of Chicago*, 656 F.3d 523, 530 (7th Cir. 2011). On the other hand, a divided panel of the Tenth Circuit ruled that a claim based on alleged failure to prevent a detainee from committing suicide before he was taken before a magistrate judge was governed by the Due Process Clause, *Barrie v. Grand Cty.*, 119 F.3d 862, 865-69 (10th Cir. 1997), while a concurring

---

[7]Prior to oral argument, Officer Banks moved to be dismissed as a party to this appeal. That motion is denied.

judge concluded that the Fourth Amendment applied. *Id*. at 870 (Briscoe, J., concurring).

In this case, Awnings loses under either approach. An arrestee's asserted Fourth Amendment right to be free from unreasonable neglect in communicating a need for medical care was not clearly established in July 2013 when Awnings was seized, so Banks is entitled to qualified immunity on that claim. *See Bailey*, 810 F.3d at 593. If the more demanding deliberate indifference standard of the Due Process Clause applies, then Awnings's claim fails for lack of alleged conscience-shocking conduct. *Ante*, at 19. We need not say more to resolve the appeal.

The court goes further, however, and says that "our precedents favor analyzing Awnings's medical needs claim under Fourteenth Amendment standards." *Id*. But our decisions do not resolve which constitutional provision applies. As we explained in *Bailey*, 810 F.3d at 593, the decision in *Carpenter v. Gage*, 686 F.3d 644 (8th Cir. 2012), applied due process analysis to the claim of an arrestee alleging indifference to medical needs, but the plaintiff did not invoke the more favorable Fourth Amendment standard, so the issue was not joined. *Id*. at 650. Two earlier cases cited in *Carpenter* applied due process analysis, but neither suggested that the plaintiff had raised a claim of unreasonable seizure under the Fourth Amendment and did not address that possibility. *See McRaven v. Sanders*, 577 F.3d 974, 979 (8th Cir. 2009); *Spencer v. Knapheide Truck Equip. Co.*, 183 F.3d 902, 905 & n.3 (8th Cir. 1999).

The court disclaims any decision about whether "an arrestee's claim alleging denial of medical care is analyzed under the Due Process Clause or the Fourth Amendment," *ante*, at 19 (quoting *Bailey*, 810 F.3d at 593), but then decides the issue anyway as to an arrestee like Awnings. The doctrinal debate cited in *Bailey* concerns whether claims arising after arrest but before a judicial determination of probable cause are governed by the Fourth Amendment. Awnings's claim against Banks arose before a probable-cause determination, so the court necessarily rejects one of the two

conflicting lines of authority cited in *Bailey* by declaring that the Due Process Clause governs Awnings's claim. I would reserve judgment on that significant question where it was not thoroughly briefed and is unnecessary to a decision.

_____